# HOLT *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF WASHINGTON.

No. 231. Argued October 13, 14, 1910.—Decided October 31, 1910.

Where the acts constituting the assault are alleged to have been made feloniously and with malice aforethought, it is not necessary to make such allegations in the preliminary averment of assault.

*Quære,* and not necessary to be decided in this case, how far, if at all, the court is warranted in inquiring into the nature of the evidence on which the grand jury acts, and how far in case of such inquiry the discretion of the trial court is subject to review.

Indictments should not be upset because some evidence, in its nature competent, but rendered incompetent by circumstances, was considered along with other evidence.

Unless the error is manifest the reviewing court should not set aside the finding of the trial court refusing to sustain a challenge of a juryman for cause on the ground of partiality or expressed opinions.

Although the more conservative course is to exclude the jury during discussions of admissibility of confessions, in the absence of statutory provision it is within the discretion of the trial judge to allow the jury to remain; and where, as in this case, he cautions the jury that the preliminary evidence has no bearing on the question to be decided, it is not error to do so.

In this case the ruling of the trial court that the District Attorney was not guilty of misconduct in making statements in his opening as to voluntary confessions of the accused sustained.

In considering a motion for new trial in a capital case on the ground that the jury was allowed to separate during the trial and that during the separation they saw newspaper articles bearing on the case, the court may, if it is going to deny the motion, assume that the jurors did read the articles, and the discretion of the trial court in denying the motion will not be reviewed in the absence of any conclusive ground that he was wrong, notwithstanding the more conservative course is not to allow the jury to separate in such cases.

In this case the objections to evidence identifying the military reserva-

tion on which a capital crime was alleged to have been committed, including introduction of deeds and condemnation proceedings, were properly overruled, and *quære* whether the United States is called on to try title to a reservation where it is in *de facto* exercise of exclusive jurisdiction.

The prohibition of the Fifth Amendment against compelling a man to give evidence against himself is a prohibition of the use of physical or moral compulsion to extort communications from him and not an exclusion of his body as evidence when it is material; and so held that testimony of a witness that the accused put on a garment and it fitted him is admissible, whether the accused had put on the garment voluntarily or under duress.

In this case, the charge and instructions of the trial court as to legal presumptions of innocence and what constitutes a reasonable doubt held to be correct.

THE facts, which involve the validity of a conviction for murder committed on a military reservation of the United States, are stated in the opinion.

*Mr. Hugh M. Caldwell*, with whom *Mr. C. F. Riddell* and *Mr. John Lewis Smith* were on the brief, for plaintiff in error.

*Mr. Assistant Attorney-General Fowler* for the United States.

MR. JUSTICE HOLMES delivered the opinion of the court.

The plaintiff in error was indicted, in the Circuit Court, for murder, alleged to have been committed "within the Fort Worden Military Reservation, a place under the exclusive jurisdiction of the United States." There was a trial and a verdict of guilty, without capital punishment, as allowed by statute. He was sentenced to imprisonment for life, and thereupon brought this writ of error. 168 Fed. Rep. 141.

The seriousness of some of the questions raised is somewhat obscured by a number of meticulous objections. We shall dispose of the latter summarily, and shall discuss at length only matters that deserve discussion. We shall follow in the main the order adopted by the plaintiff in error.

The indictment is well enough. The words quoted at the outset convey with clearness sufficient for justice that the Fort Worden Military Reservation was under the exclusive jurisdiction of the United States at the time of the murder.—It is alleged that Holt did with force and arms an assault make upon one Henry E. Johnson with a certain iron bar, and did then and there feloniously, wilfully, knowingly and with malice aforethought strike, beat, and mortally wound him, the said· Henry E. Johnson, with said iron bar, etc. As the acts constituting the assault are alleged to have been made feloniously and with malice aforethought, there was no need to make such allegations in the preliminary averment of assault.

It is pressed with more earnestness that the court erred in not granting leave to withdraw the plea of Not Guilty, and to interpose a plea in abatement and motion to quash. The ground on which leave was asked was an affidavit of the prisoner's counsel that they had been informed by Captain Newton, of the Coast Artillery Corps, that he testified before the grand jury to admissions by the prisoner, but that these admissions were obtained under circumstances that made them incompetent. The affidavit added that aside from the above testimony there was very little evidence against the accused. Without considering how far, if at all, the court is warranted in inquiring into the nature of the evidence on which a grand jury has acted, and how far, in case of such an inquiry, the discretion of the trial court is subject to review, *United States* v. *Rosenburgh*, 7 Wall. 580, it is enough to say that there is no reason for reviewing it here.

All that the affidavit disclosed was that evidence in its nature. competent; but made incompetent by circumstances, had been considered along with the rest. The abuses of criminal practice would be enhanced if indictments could be upset on such a ground. *McGregor* v. *United States*, 134 Fed. Rep. 187, 192, 430. *Radford* v. *United States*, 129 Fed. Rep. 49, 51. *Chadwick* v. *United States*, 141 Fed. Rep. 225, 235.

Next it is said that there was error in not sustaining a challenge for cause to a juryman; with the result that the prisoner's peremptory challenges were diminished by one. On his examination it appeared that this juryman had not talked with anyone who purported to know about the case of his own knowledge, but that he had taken the newspaper statements for facts; that he had no opinion other than that derived from the papers, and that evidence would change it very easily, although it would take some evidence to remove it. He stated that if the evidence failed to prove the facts alleged in the newspapers he would decide according to the evidence or lack of evidence at the trial, and that he thought he could try the case solely upon the evidence fairly and impartially. The finding of the trial court upon the strength of the juryman's opinions and his partiality or impartiality ought not to be set aside by a reviewing court unless the error is manifest, which it is far from being in this case. See *Reynolds* v. *United States*, 98 U. S. 145. *Hopt* v. *Utah*, 120 U. S. 430. *Spies* v. *Illinois*, 123 U. S. 131. If the decisions of the State of Washington are of especial importance, we do not understand *Rose* v. *State*, 2 Washington, 310, 312, *State* v. *Croney*, 31 Washington, 122, 125, 126, and intervening cases to be overruled by *State* v. *Riley*, 36 Washington, 441, 447, 448.

Before the above-mentioned motion to withdraw the plea of not guilty was argued the judge was asked to exclude the twelve jurors who had been selected, al-

though not sworn.  He replied that he was unwilling to exclude the jury from any part of the proceedings in the trial.  Later, after the jury had been sworn, he pursued the same course while hearing preliminary evidence of the circumstances in which the prisoner was alleged to have made statements, and while hearing arguments as to admitting the statements. The district attorney spoke of the admissibility of 'confessions' in the course of his remarks.  Exceptions were taken and the judge's refusal is urged with much earnestness to have been error.  But we are of opinion that it was within the discretion of the judge to allow the jury to remain in court.  Technically the offer of the evidence had to be made in their presence before any question of excluding them could arise.  They must have known, even if they left the court, that statements relied on as admitting part or the whole of the Government's case were offered.  The evidence to which they listened was simply evidence of facts deemed by the judge sufficient to show that the statements, if any, were not freely made, and it could not have prejudiced the prisoner.  No evidence was admitted that the prisoner had made any confession and his statements were excluded.  Moreover the judge said to the jury that they were to decide the case on the testimony as it came from the witnesses on the stand; not what counsel might say or the newspapers publish; that he was not excluding them, because he assumed that they were men of experience and common sense and could decide the case upon the evidence that the court admitted.  He also told them in the strongest terms that the preliminary evidence that he was hearing had no bearing on the question they had to decide.  No doubt the more conservative course is to exclude the jury during the consideration of the admissibility of confessions, but there is force in the judge's view that if juries are fit to play the part assigned to them by our law they will be able to do what a judge has to do

every time that he tries a case on the facts without them, and we cannot say that he was wrong in thinking that the men before him were competent for their task.

Objections similar to the last are taken to the conduct of the district attorney. They are stated and argued, like the last, with many details, which we have examined, but think it unnecessary to reproduce. In his opening the district attorney stated that the prisoner admitted that a coat with soot marks upon it, and a gunner's badge were his, and was going on to recite further statements, when they were objected to. The district attorney answered that these were voluntary confessions, but that he would omit them, if objected to, until the proper time, and desisted. Objection was made to the word confessions, and the judge replied that he did not hear any statement that the prisoner made any confession. No instruction was asked, but, as we have said, the judge told the jury that they were to regard only the evidence admitted by him, not statements of counsel, etc. The attempt to get in the evidence is criticised also as unduly pressed. We see no reason to differ from the judge's statement upon a motion for a new trial that the United States attorney was guilty of no misconduct. The exceptions on this point also are overruled.

We will take up in this connection another matter not excepted to but made one of the grounds for demanding a new trial, and also some of its alleged consequences, because they also involve the question how far the jury lawfully may be trusted to do their duty, when the judge is satisfied that they are worthy of the trust. The jurymen were allowed to separate during the trial, always being cautioned by the judge to refrain from talking about the case with anyone and to avoid receiving any impression as to the merits except from the proceedings in court. The counsel for the prisoner filed his own affidavit that members of the jury had stated to him that

they had read the Seattle daily papers with articles on the case while the trial was going on. He set forth articles contained in those papers, and moved for a new trial. The court refused to receive counter affidavits, but, assuming in favor of the prisoner that the jurors had read the articles, he denied the motion. This court could not make that assumption if the result would be to order a new trial, but the probability that jurors, if allowed to separate, will see something of the public prints is so obvious, that for the purpose of passing on the permission to separate it may be assumed that they did so in this case.

We are dealing with a motion for a new trial, the denial of which cannot be treated as more than matter of discretion or as ground for reversal, except in very plain circumstances indeed. *Mattox* v. *United States,* 146 U. S. 140. See *Holmgren* v. *United States,* 217 U. S. 509. It would be hard to say that this case presented a sufficient exception to the general rule. The judge did not reject the affidavit, but decided against the motion on the assumption that more than it ventured to allege was true. As to his exercise of discretion, it is to be remembered that the statutes or decisions of many States expressly allow the separation of the jury even in capital cases. Other States have provided the contrary. The practice has varied, with perhaps a slight present tendency in the more conservative direction. If the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trial under the conditions of the present day. Without intimating that the judge did not go further than we should think desirable on general principles, we do not see in the facts before us any conclusive ground for saying that his expressed belief that the trial was fair and that the prisoner has nothing to complain of is wrong.

Several objections were taken to the admission and

sufficiency of evidence. The first is merely an attempt to
raise technical difficulties about a fact which no one really
doubts, namely, that the band barracks, the undisputed
place of the crime, were within the exclusive jurisdiction
of the United States. A witness testified that they were
within the inclosure of Fort Worden under military guard
and control, from which all unauthorized persons are
excluded, and that he knew that the fence was coincident
with the boundaries shown on a map objected to but
admitted. He identified the band barracks as described
in certain condemnation proceedings. The State of Wash-
ington had assented by statute to such proceedings
and Congress had authorized them. The deeds and con-
demnation proceedings under which the United States
claimed title were introduced. The witness relied in part
upon the correctness of official maps in the Engineers'
Department made from original surveys under the au-
thority of the War Department, but not within his per-
sonal knowledge, and he referred to a book showing the
titles to Fort Worden compiled under the same authority.
The documents referred to are not before us, but they
properly were introduced, and so far as we can see justified
the finding of the jury, even if the evidence of the *de facto*
exercise of exclusive jurisdiction was not enough, or if the
United States was called on to try title in a murder case.
We think it unnecessary to discuss this objection in
greater detail.

Another objection is based upon an extravagant exten-
sion of the Fifth Amendment. A question arose as to
whether a blouse belonged to the prisoner. A witness
testified that the prisoner put it on and it fitted him.
It is objected that he did this under the same duress that
made his statements inadmissible, and that it should be ex-
cluded for the same reasons. But the prohibition of com-
pelling a man in a criminal court to be witness against
himself is a prohibition of the use of physical or moral

compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof. Moreover, we need not consider how far a court would go in compelling a man to exhibit himself. For when he is exhibited, whether voluntarily or by order, and even if the order goes too far, the evidence, if material, is competent. *Adams* v. *New York*, 192 U. S. 585.

The remaining exceptions relate to the charge. One was to a refusal to embody an instruction requested as to reasonable doubt. The court, however, gave full and correct instructions on the matter, and indeed rather anxiously repeated and impressed upon the jury the clearness of the belief they must entertain in order to convict. See *Dunbar* v. *United States*, 156 U. S. 185, 199. 4 Wigmore, Evidence, § 2497. Another exception was to the refusal to give an instruction that "the presumption of innocence starts with the charge at the beginning of the trial, and goes with [the accused] until the determination of the case. This presumption of innocence is evidence in the defendant's favor," etc. The judge said: "The law presumes innocence in all criminal prosecutions. We begin with a legal presumption that the defendant, although accused, is an innocent man. Not that we take that to be an absolute rule, but it is the principle upon which prosecutions must be conducted; that the evidence must overcome the legal presumption of innocence. And in order to overcome the legal presumption, as I have already stated, the evidence must be clear and convincing and sufficiently strong to convince the jury beyond a reasonable doubt that the defendant is guilty," with more to the same effect. This was correct, and avoided a tendency in the closing sentence quoted from the request to mislead. *Agnew* v. *United States*, 165 U. S. 36, 51, 52. See also 4 Wigmore, Evidence, § 2511.

After the jury had been sent out they returned and asked the court what constituted a reasonable doubt. The court replied, "A reasonable doubt is an actual doubt that you are conscious of after going over in your minds the entire case, giving consideration to all the testimony and every part of it. If you then feel uncertain and not fully convinced that the defendant is guilty, and believe that you are acting in a reasonable manner, and if you believe that a reasonable man in any matter of like importance would hesitate to act because of such a doubt as you are conscious of having, that is a reasonable doubt, of which the defendant is entitled to have the benefit." He denied the notion that any mere possibility was sufficient ground for such a doubt, and added that in the performance of jury service they should decide controversies as they would any important question in their own affairs. This was excepted to generally, and the court was asked to add that if the jury found one fact inconsistent with the guilt of the defendant they should acquit. The court already had given this instruction in the charge, and was not called upon to repeat it. As against a general exception the instructions given were correct. Some other details in the trial are criticised, but we have dealt with all that seem to us to deserve mention, and find no sufficient reason why the judgment should not be affirmed.

*Judgment affirmed.*