420 P.2d 170

**STATE of Arizona, Appellee.**

**v.**

**Anne Lucille STELZRIEDE, Appellant.**

**No. 1709.**

Supreme Court of Arizona.

In Banc.

Nov. 17, 1966.

Darrell F. Smith, Atty. Gen., and Gary K. Nelson, Asst. Atty. Gen., for appellee.

Vernon B. Croaff, Public Defender, Maricopa County, and Grant Laney, Deputy Public Defender, for appellant.

UDALL, Justice.

The appellant, hereinafter referred to as defendant, was charged with the crime of burglary with an allegation of prior conviction. A trial was held in the Superior Court of Maricopa County on February 15th and 16th, 1966, resulting in a verdict of burglary in the first degree.

After the verdict had been rendered in court the defendant admitted the prior conviction. She was sentenced as a second of-

fender and this appeal followed. The facts may be summarized as follows:

Between the hours of 8 p. m. on November 20, 1965 and 7:15 a. m. on November 21st, the office of the Humboldt Oil & Refining Company in Phoenix was burglarized. Latent fingerprints were taken from the premises of the oil company and it was determined the fingerprints were those of the defendant. Thereafter defendant was arrested and placed in the city jail. On the morning of November 24th the defendant was interrogated by Officer Copeland of the Phoenix Police Department, at which time defendant was advised of her constitutional rights to remain silent, to have an attorney, and that anything said by her might be used against her in the trial or any proceeding that might follow.

The defendant expressed a desire to talk with counsel but upon being advised she could get in touch with counsel if she wished, she declined the opportunity, stating she didn't want counsel at that time. She expressed a desire to terminate the interview, which was done.

Two hearings were held outside the presence of the jury to determine the voluntariness of statements made to police officers by defendant. As a result of these hearings the court ruled inadmissible the statements made by defendant to the officer on November 24th and also statements made by defendant to the fingerprinting officer at the time her fingerprints were taken. Only the statements made on the 26th of November, supra, were admitted in evidence as having been voluntarily made.

The police officer was the only witness that testified as to the interrogation of the defendant, conducted by him on November 26th. His testimony, taken from the Transcript of Evidence, in pertinent part is as follows:

"Q  And now on the 26th, in the morning, did you have a conversation with her?

"A  Yes, I did.

"Q  Was anyone with you at that time?

"A  No, sir.

"Q  And did you have occasion to advise her of any of her rights at that time?

"A  Yes, I did.

"Q  And of what rights did you advise her?

"A  Of the same previously mentioned.

"Q  And at that time did you offer any force, threats or coercion in any way to her?

"A  No, sir, I didn't.

"Q  And did you in fact have a conversation with her?

"A  Yes, I did.

"Q  And would you relate this conversation as best you can remember.

"A  Well, I went over the information I had about the burglary and explained to her that I had given her a day to think over what we had talked to her about before, and told her again we had fingerprints, her fingerprints, that were found at the scene of the burglary, and that I wanted her to explain to me how they got there. And I asked her if she worked there, and she said no. I asked her if she had ever been there, and she said no. And I don't remember, word-for-word, but I remember asking her if she was involved in this particular burglary, and she said, 'Yes, but you prove it.' She said she didn't want to discuss the matter any further because she hadn't seen her lawyer yet, and she refused to answer any more questions."

On cross-examination the following questions were asked and answers made:

"Q  On the 26th did you ask her if she had talked to an attorney?

"A  Yes.

"Q  What was her answer?

"A  She said she hadn't.

"Q  Did you advise her again she had a right to an attorney?

"A  Yes.

\*  \*  \*  \*  \*  \*

"Q  Did she ask at all in any way for an attorney during the 26th interrogation?

"A  No.

"Q  Did she mention an attorney?

"A  Yes, she did.

"Q  And what did she say?

"A  She said she'd like to see her attorney before she said anything else.

"Q  Was this at the end or beginning of the conversation?

"A  That was at the end.

"Q  What rights did you advise her of on the 26th?

"A  Advised her she was a suspect in this particular report and that she had a right to have an attorney, and that she didn't have to talk to me if she didn't wish to, and anything she said could be held against her in Court."

And further on cross-examination:

"Q  This statement leading up to—or preceding up to this statement that you testified to, as to this idea of proving it; would you tell me the question you asked and the response she gave?

"A  I believe I asked her—not exact words, but I asked her nearly this phrase, I asked her if she was involved in this burglary.

"Q  And her answer was?

"A  'Yes, but you prove it.'

"Q  And was this spoken quickly or after some hesitation?

"A  It was sort of an exclamation remark I think she said before she thought.

"Q  Stated it then immediately after your question?

"A  Yes.

"Q  She had denied everything up to that point?

"A  That is correct.

"Q  All of a sudden she blurted out, 'Yes, but you prove it'?

"A  Yes."

The officer further testified that had she made a request to obtain an attorney he would have helped her to contact one but that on neither the 24th or 26th, did she request that an attorney be procured.

Defendant first assigns as error the admission in evidence of the incriminating statements made by the defendant on November 26, 1965, contending the statements were clearly not admissible under the doctrine announced by the Supreme Court of the United States in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and the doctrine enunciated in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.

■  The Supreme Court of the United States, in Johnson v. State of N. J., 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, held that the rule enunciated in Miranda, supra, would only be applied in governing police interrogation prospectively, to trials commencing after June 13, 1966, the date of Miranda. Hence, the rules announced in Miranda were not available to the defendant.

■  The facts in this case are clearly distinguishable from the facts in Escobedo. Here the defendant was advised of her right to have counsel both on November 24th and on November 26th; advised of her right to remain silent; and advised that any statements made by her could be used against her in subsequent proceedings. She was advised and given the opportunity to consult an attorney, both on the 24th and 26th of November. This she declined to do. The statements made by her on November 26th were voluntarily made.

Under the facts in this case it is clear that the defendant was not deprived of her constitutional rights as set out in Escobedo.

Defendant next contends it was error to take her fingerprints in the absence of defendant's counsel.

Since the Court ruled out the admission of any statements made by defendant to the fingerprinting officer, the sole question was, "May finger-printing evidence obtained from a suspect against her will be used as evidence at trial without violating any federal or state constitutional privilege?"

In Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, the United States Supreme Court held that the privilege against incrimination protects an accused only from being compelled to provide the state with evidence of a testimonial or communicative nature, and that this privilege is not violated by a compulsion which makes a suspect the source of real or physical evidence. Citing 8 Wigmore, Evidence, § 2265, the Court stated:

"* * * both federal and state courts have usually held that it [the privilege] offers no protection against compulsion *to submit to fingerprinting*, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." (Emphasis supplied) 348 U.S. at 764, 86 S.Ct. at 1832.

See also: Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448; Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021.

The law seems to be clear that the privilege against incrimination does not extend to the accepted fingerprinting procedures of law-enforcement agencies.

The judgment and sentence is affirmed.

STRUCKMEYER, C. J., BERNSTEIN V. C. J. and LOCKWOOD and McFARLAND, JJ., concur.