Lyman H. Smith
(Yates County Judge and Acting Judge for Monroe County). The question is whether in-court identification of the accused at trial is to be excluded from evidence because the accused was exhibited to the complainant witness before trial in absence of counsel (cf. United States v. Wade, 388 U. S. 218; Gilbert v. California, 388 U. S. 263; Stovall v. Denno, 388 U. S. 293).
One, Angelica DeAngelis, doing business as “ General Liquor Store ” of Rochester, New York,, was robbed on the afternoon of May 4, 1967, and again on the afternoon of May 6, 1967. On *97 the first occasion, a Negro male entered her store, threatened Mrs. DeAngelis with a knife, and upon the entry of a customer, allegedly fled with a one dollar bill. On the second occasion the same Negro (allegedly) again entered the store, threatened Mrs. DeAngelis with “ something ” in his coat pocket, stating he had a gun, and took from the cash register approximately $100.
Following the second robbery, Mrs. DeAngelis, in her complaint to the police, described the robber as “ the same man ”.
On June 14, 1967 Mrs. DeAngelis saw her alleged assailant on the street, but was unable to follow him. However, two days later (June 16, 1967) she again saw the same person, and telephoned the police. Upon her description a detective officer arrested the defendant, "William Lee Jefferson, at a nearby restaurant-bar, and took him to police headquarters. The accused was placed in a room alone and there viewed by the complainant, Mrs. DeAngelis, through a one-way mirror. She identified Jefferson as the person who had robbed her on both of the afore-mentioned dates.
A pretrial hearing has been held to develop the facts surrounding the identification of the accused by the victim, particularly including but not limited to the facts and circumstances surrounding the victim’s identification of the accused at police headquarters in the absence of counsel. (See People v. Smiley, 54 Misc 2d 826; also see People v. Gordon, Rockland County Ct., Sept. 7, 1967, Silberman, J.)
Upon this pretrial hearing the accused has testified that when arrested he was not advised by the arresting officer of the charge against him; that he was not advised of his rights; and that his repeated requests for counsel were ignored. He contends this conduct violated his Fifth Amendment privilege against self incrimination; his Sixth Amendment right to assistance of counsel; and his Fourteenth Amendment right to due process of law. Parenthetically, it should be noted that both detectives testified upon the hearing that the accused was advised of the charge upon arrest, was twice advised of his rights, and that prior to identification he twice refused counsel in emphatic terms.
The identification of the accused by the victim (through a one-way glass) did not violate the defendant’s privilege against self incrimination. (Holt v. United States, 218 U. S. 245; Schmerber v. California, 384 U. S. 757; United States v. Wade, supra). Compelling the accused merely to exhibit his person for observation by a prosecution witness involves no compulsion of the accused to give evidence having testimonial significance.
Specifically, we deal here with the question of whether or not the proposed “in-court” identification of the accused on the *98 trial to follow will be the tainted product of the pretrial identification. (United States v. Wade, supra; cf. Wong Sun v. United States, 371 U. S. 471.)
This court is convinced that the prosecution has established beyond a reasonable doubt any ‘1 in-court ’ ’ identification of the accused by the victim will be based wholly upon her observations of the accused other than and prior to her identification at police headquarters on June 16, 1967.
The pretrial plenary hearing has established beyond a reasonable doubt that the victim in the instant case had seen the accused on many occasions prior to the robberies of May 4, and May 6, 1967. The accused confirmed this upon direct examination. The victim did not know his name, but she knew him by sight. While the vagaries and hazards of eyewitness identification are well known, the victim in the instant case knew the accused so well before the robberies occurred that she was able to name his frequent companions and relatives. It must be conceded that her opportunities to observe him during the course of two robberies within 72 hours were unique. While the specificity of her description of the accused (to the police) following each robbery may have left something to be desired, she was able, nevertheless, to spot the accused when next she saw him. Indeed, the apprehension of the accused was hardly the result of police investigation, but of alert action on the part of this brave citizen. On at least three occasions prior to June 16,1967, she had staunchly refused to “identify” photos of more than 100 “proposed” suspects. It is obvious from the record that she knew whom she was looking for.
There was nothing ‘1 contrived ” or “ suggested ’ ’ in her identification of the accused at police headquarters. Indeed her reactions of fear and positiveness were most spontaneous(1) on this occasion.
*99 It is of some significance that the aecnsed is the holder of a New York State Regents diploma. It is obvious to the court he is above average intelligence. He has been involved with the law on many previous occasions. He is used to consulting with attorneys. He is particularly skillful in drawing pro se applications for writs of habeas corpus. In a word, he is distinctive — a cut above the average — one not easily forgotten.
Upon this pretrial hearing it was the testimony of the victim that the accused has a soft voice. Prior to her testimony upon this hearing the victim had not heard the accused speak since the date of the alleged robberies. The court is satisfied the victim did not hear the accused speak at the time of the viewing of the accused at Police Headquarters. The court was able to observe from the speech of the accused upon this pretrial hearing that he does have a uniquely soft and resonant voice. The testimony of the victim with reference to the defendant’s voice confirms the independent origin of the victim’s observations and identification of the accused — wholly free from any taint arising from the confrontation at Police Headquarters.
Prom the hearing record (which is hereby incorporated in toto in this decision by reference) this court is compelled to conclude that any in-court identification of the accused, and proposed in-court testimony concerning the same will not be the “tainted fruit ” of the earlier identification. The motion to exclude is denied.

 Excerpt of testimony of Detective George McDonald upon pretrial hearing:
Q. And, do you recall what the defendant said at the Detective Bureau when he was advised of his rights .by Detective Delmonte? A. He said, “I don’t need any lawyer. I don’t need anything. I didn’t do anything.”
Q. And, do you recall what time it was that you saw Mrs. DeAngelis at Police Headquarters after having brought the defendant in? A. It was about 3 :30, quarter to four.
Q. And, where was it that you first met Mrs. DeAngelis? A. I met her out in the hallway as you get off the elevator on the fourth floor.
Q. And, do you recall what was said and done from the time you first met her in the corridor near the elevator? A. Yes, sir. I told her we had picked up the man that she had called about. She started to shake and she says, “ I don’t have to look at Mm? He can’t see me?” I said, “Ho, we will take you *99 to a room where there is a two-way glass.” And, I took her to the other side of the room. Detective Delmonte took Willie Lee Jefferson to the other side and we opened the door to go in. They were in the other room where the light was on. She grabbed my arm, she said, “ That’s the son of a bitch.” I said, “ Wait a minute.” T said, “ You look and make sure. You got to be sure on this if he is the man that you are talking about.” She stood, slie walked up to the glass, she looked, she started shaking, she grabbed me and she said, “ That’s him. That’s him. I will never forget him.”
Q. And, was there any other conversation that took place between you and Mrs. DeAngelis during that time? A. Ho, Sir, that’s about it.