UNITED STATES ex rel. Dominick
CAMPAGNE, Petitioner,

v.

Harold W. FOLLETTE, Warden of Green-
haven State Prison, Stormville,
New York, Respondent.

No. 68 C 866.

United States District Court
E. D. New York.

March 11, 1969.

Peter Purvis, New York City (Antho-
ny F. Marra and Gretchen White Ober-
man, New York City, of counsel), for
petitioner.

Mortimer Sattler, New York City
(Louis J. Lefkowitz, Atty. Gen. of New
York, of counsel), for respondent.

MEMORANDUM and ORDER

DOOLING, District Judge.

Petitioner was in 1963 convicted in
Kings County Supreme Court of robbery
in the first degree, grand larceny in the
first degree, and assault in the second
degree, and he was given concurrent sen-
tences totalling fifteen to thirty years in
state prison. Petitioner, complaining of
errors appearing of record, has exhausted

his state remedies of appeal: the Appellate Division affirmed the conviction, one justice dissenting (21 A.D.2d 908, 252 N.Y.S.2d 411) and the Court of Appeals affirmed, three judges dissenting (16 N.Y.2d 576, 260 N.Y.S.2d 844, 208 N.E.2d 787) on the dissenting opinion in the Appellate Division. Petitioner's codefendant sought and was denied certiorari. Valenti v. New York, 1966, 384 U.S. 989, 86 S.Ct. 1891, 16 L.Ed.2d 1005. Two grounds of relief are urged, *first*, that the Petitioner was in substance denied the assistance of counsel because his counsel was forced to trial without adequate time to prepare, and *second*, that the Petitioner was denied a fair trial, *i. e.*, was denied fundamental due process, by the trial court's unexcepted-to omission to charge the presumption of innocence. The latter point was the ground of the dissent of Mr. Justice Christ and of Chief Judge Desmond, and Judges Dye and Burke.

■ 1. The trial record is painful reading; counsel, coming into the case on the Friday before trial, pressed hard for adjournment; the Court, suspicious of a last-minute maneuver to force an adjournment of the trial to the session of another judge, dealt sharply with counsel, and clashes over rulings exacerbated the unpleasant relation on which the trial started. Yet, it cannot be said that the time reluctantly granted was manifestly inadequate to the modest demands of the case, or that enough was produced either to the trial judge or in this Court to make out a verifiable claim that the defense suffered from inadequacy of time to prepare. *Cf.* United States v. Cozzi, 7th Cir. 1965, 354 F.2d 637; Stamps v. United States, 8th Cir. 1967, 387 F.2d 993, 995–996.

2. Petitioner was tried with one Valenti on charges growing out of their alleged daylight robbery of a liquor store in the Williamsburg neighborhood in Brooklyn. Valenti, allegedly, wielded a knife. The robbers bound and gagged the clerk in the store, and they made off with $1,800 in currency. The clerk, the principal witness at the trial, had never seen either robber before their brief encounter during the holdup, and Petitioner and Valenti were not arrested as the robbers for a month or more. The clerk identified Petitioner a month later at a precinct station house, and Valenti, five weeks later. The trial was short, and simple, and, if the clerk's identification of Petitioner and Valenti was not shaken, defense was futile. The clerk evidently was an impressively good witness (see Record on Appeal to Court of Appeals, pp. 168–169, 178, 181, 185–186, 209). Petitioner attempted to prove an alibi, but his witness was not impressive (Record etc., pp. 148–153), and the alibi point was not emphasized in summation (Record etc., pp. 182–183).

■ Valenti's counsel, in summation, asserted that "A man is presumed innocent until he is found guilty beyond a reasonable doubt" (Record etc., p. 167). The Court did not—at least *in haec verba*—charge the presumption of innocence. The New York Code of Criminal Procedure § 389, provides that a defendant "is presumed to be innocent, until the contrary be proved; and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal." The charge is, of course, usually given in New York, a failure to give it is, ordinarily, reversible error. People v. Leavitt, 1950, 301 N.Y. 113, 92 N.E. 2d 915, and, in view of Code of Criminal Procedure §§ 527, 542, providing for relief against error on appeal, if justice requires it, whether exception has been taken or not—provided the error is not merely technical—there is no reason to doubt that a new trial would have been ordered on Petitioner's appeal had a majority of the judges in either appellate court considered that the verdict was "against the law," or that justice required a new trial.* *Cf.* People v. Scott,

---

* The majority ruling in the Petitioner's case was followed in People v. Dornblut, 2d Dept. 1965, 24 A.D.2d 639, 262 N.Y.S. 2d 414, with expressed reluctance on the

Erie Co., 1958, 10 Misc.2d 309, 171 N.Y.S.2d 552. See to the same general effect Merrill v. United States, 5th Cir. 1964, 338 F.2d 763, 767–768; McDonald v. United States, 1960, 109 U.S.App.D.C. 98, 284 F.2d 232.

Whether that was a constitutionally supportable view of the case would appear to depend on the effect of the presumption and on the sense of the charge given as it was. The New York statute associates the presumption with proof beyond a reasonable doubt. The Supreme Court, reviewing the law as it then stood, observed, some seventy years ago, the same association made in certain of the state cases, and noted that some state cases, arising under specific statutes, appeared to require reversal even where the charge was not asked for and/or refused, but that cases in other states did not require reversal where a charge on the presumption was not requested and was omitted but an adequate instruction on reasonable doubt was given, and that there was one state at least which countenanced refusal of the request where the reasonable doubt charge was given. Coffin v. United States, 1895, 156 U.S. 432, 456–458, 15 S.Ct. 394, 39 L.Ed. 481. For the federal courts, the Court concluded that the presumption of innocence had evidentiary value favorable to the defendant, and that therefore, a refusal to charge it when requested was reversible error because it denied to the defendant the effect with the jury of "a portion of the proof created by law," *ibid.* at 460–461, 15 S.Ct. at 405. Contrast the language of Agnew v. United States 1897, 165 U.S. 36, 51–52, 17 S.Ct. 235, 41 L.Ed. 624. The Court in *Coffin* held that the error of refusing the presumption of innocence request to charge was not cured by the fact that the trial court "instructed fully on the subject of reasonable doubt." 156 U.S. at 453, 15 S.Ct. at 403. Howard v. Fleming, 1903, 191 U.S. 126, 136–137, 24 S.Ct. 49, 48 L.Ed. 121, however, directly held that a state court's refusal of a requested charge of the presumption of innocence was not a denial of due process where the charge on reasonable doubt was given. Holt v. United States, 1910, 218 U.S. 245, 253, 31 S.Ct. 2, 54 L.Ed. 1021, taken with *Agnew, supra,* may have rejected *Coffin's* theory that the presumption of innocence has, in the federal view of it, evidentiary content. See McCormick, Evidence, 1954, 648 fn. 46, 48. And plainly the cases in the Supreme Court cannot be said to adumbrate a rule of constitutional rigidity that fair trial by jury requires that a court charge the presumption of innocence whether it is requested or not in addition to giving an adequate charge on reasonable doubt. *Cf.* McCormick, Evidence, 1954, 647–649, § 309.

New York has consistently required the charge to be given when requested. It would be difficult to say that the presumption has any specific role in New York law except to operate in precatory support of the reasonable doubt charge, and it is in harmony with the usual instruction that the defendant's failure to testify does not support an adverse inference and that the defendant need not produce evidence of his innocence. People v. Creasy, 1923, 236 N.Y. 205, 223, 140 N.E. 305 held that in a case in which the evidence was that a decedent had either been killed by the defendant or had killed herself, the presumption of innocence suppressed the presumption against suicide and entitled the defendant to an instruction that the decedent had killed herself. The *Creasy* case was, however, quickly overruled. People v. Miller, 1931, 257 N.Y. 54, 61, 177 N.E. 306. The most recent consideration of the operation of the presumption is the holding that the jury may not be instructed that the presumption of guilt arising from falsely explained possession of stolen goods was

part of three of the five justices of the panel, who concurred in the statement that the presumption might in time vanish if appellate courts did not insist on its use in instructions to the jury. Arguing that

the *Dornblut* expression invited the Court of Appeals to reconsider the affirmance in the Petitioner's case, Petitioner sought reargument in the Court of Appeals, but it was denied. 16 N.Y.2d 883.

**1258**

an exception to and survived the presumption of innocence; so to charge is to imply that the presumption is subordinate to an *evidentiary* rule, and is to shift the burden of proof to the defendant. People v. Papanier, 2d Dept. 1964, 20 A.D.2d 672, 247 N.Y.S.2d 61, rev'd on dissenting opinion in Appellate Division, 1965, 15 N.Y.2d 727, 256 N.Y.S.2d 940, 205 N.E.2d 204. The opinion essentially equates the presumption with allocation of the burden of proof in this language: "The existence of evidence from which the jury may draw an inference of guilt does not destroy the presumption [of] innocence, unless in the jury's view the inculpatory evidence, together with all the other evidence or lack of evidence in the case, overcomes the presumption."

The presumption of innocence can not be said to have such specificity of function that its bare and unnoticed omission makes out a deprivation of due process if the charge from which it is omitted otherwise fairly presents the case to the jury and properly advises the jury on the burden of proof. The charge in Petitioner's case met that standard. Much might with profit have been omitted (see, e. g., Record etc. pp. 191–196), and much in it might be thought to tempt the jury to see the defendants silhouetted *against* a world of order and law enforcement. But the Trial Judge made plain that neither the indictment nor its finding was evidence against the defendants (Record etc. p. 196); that defendants did not have to establish their innocence (*id.* p. 197); that the People had to prove their case by honest, credible evidence (*id.* p. 198); that the proof had to be beyond a reasonable doubt (*id.* p. 198); that the jury were the sole judges of the facts and of the credibility of the witnesses (*id.* p. 208); that the identification evidence had to be weighed with the utmost caution and had to be sufficiently certain to preclude every possibility of mistake (*id.* p. 211); that no unfavorable

inference was to be drawn from a defendant's failure to testify (*id.* p. 212); that Petitioner had no duty to establish his alibi "beyond a reasonable doubt" since the People's burden of proving guilt beyond a reasonable doubt never shifted from the prosecution's shoulders (*id.* p. 213); that Petitioner's criminal record went only to his credibility as a witness and did not evidence guilt (*id.* p. 214); that to prove guilt beyond a reasonable doubt it had to be proved to a moral certainty (*id.* p. 215); that if the evidence were evenly balanced, the jury would have to acquit (*id.* p. 215); that the test is qualitative not quantitative (*id.* pp. 215–216); that even where the evidence preponderates for the People, it does not automatically establish guilt beyond a reasonable doubt, but guilt must be established to a moral certainty (*id.* p. 216); that the acquitting doubt is not the possible but the reasonable doubt (*id.* p. 216); that there may be a far cry from proving a man guilty beyond a reasonable doubt and proving him guilty beyond the shadow of a doubt, or all doubt, or to a mathematical certainty (*id.* pp. 216, 218). The references to the consequences of an even balance of evidence, and to the effect of a preponderance of evidence are out of place in a criminal case, and the "far cry" passage was not only needless but it also risked a dangerous dilution of the required force of proof by seeming to dilate the size that a juror's doubt had to attain before it could be called reasonable. Such considerations are nuances that cannot be supposed to have escaped the state appellate courts' notice; they are not matters which can be said, in the setting of the Petitioner's trial, to reach the constitutional level.

It follows that there has been no denial of fundamental due process and it is, accordingly,

Ordered that the petition for the issuance of a writ of habeas corpus is denied and the petition is dismissed.