■ THE PEOPLE OF THE STATE OF NEW YORK v. SEKOU.— Application unanimously denied. Memorandum: Petitioners-defendants, Attica Brothers, by order to show cause seek a change of venue of the criminal trials soon to be commenced in Erie County arising out of the Attica Prison rebellion in September, 1971. The first of these trials scheduled to begin September 11, 1974 has been stayed by order of this court pending the hearing and determination of this appli-

cation. The instant application is properly before this court pursuant to CPL 230.20 (subd. 2). That section authorizes the Appellate Division to order a change of venue "at any time" prior to trial of an indictment upon a demonstration of "reasonable cause to believe that a fair and impartial trial cannot be had" in the county where the action is pending. Petitioners present a statistical study undertaken by the Attica Brothers legal defense in an effort to measure scientifically certain attitudes of the population of Erie County which constitutes the pool from which jurors in these cases will be selected. Based upon the conclusions drawn therefrom, petitioners contend that they have presently demonstrated a reasonable likelihood that a fair and impartial jury cannot be impaneled in these cases in Erie County. Concerned, as courts must always be, that there must never be any impairment or violation of a defendant's guarantee of a fair and impartial trial, we assume, for the purpose of our consideration of this application that the survey's conclusions are accurate. "A fair trial in a fair tribunal is a basic requirement of due process." (*Matter of Murchison*, 349 U. S. 133, 136.) Impartiality of those delegated to judge the innocence or guilt of a criminally accused is the paramount ingredient in the element of fairness. Our system of justice commands that a defendant is entitled to a panel of impartial, indifferent jurors and "the theory of the law is that a juror who has formed an opinion cannot be impartial." (*Reynolds* v. *United States*, 98 U. S. 145, 155.) As clarified by *Irvin* v. *Dowd* (366 U. S. 717, 722, 723), "It is not required, however, that the jurors be totally ignorant of the facts and issues involved.— To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. *Spies* v. *Illinois*, 123 U. S. 131; *Holt* v. *United States*, 218 U. S. 245; *Reynolds* v. *United States, supra.*" Warning that a court may never foreclose the inquiry as to whether, in a given case, the application of this rule would work a deprivation of due process, the *Irvin* court recited the *Reynolds* test to be applied as "'whether the nature and strength of the opinion formed are such as in law necessarily  *  *  *  raise the presumption of partiality'". The study offered by petitioners-defendants purports to demonstrate a pervasive climate of partiality and bias among potential jurors in Erie County. Although the study suggests that a segment of the public may indeed have formed opinions regarding the events underlying the indictments charged, the test of impartiality is more strenuous and demanding. The survey's own conclusions reveal that less than 23% of those interviewed indicated that they could not be impartial and follow a Judge's instructions as to applicable legal principles. It is evident that there remains a great majority of the population which has indicated a willingness to "lay aside [its] impression[s] or opinion[s] and render a verdict based on the evidence presented in court". Although not singularly conclusive on this application, such evidence challenges the assertion that a present demonstration of an inability to receive a fair and impartial trial in Erie County has at this juncture been made. Petitioners-defendants have not on this application met their burden of establishing that the nature, strength and quality of any opinions formed by potential jurors "are such as in law necessarily — raise the presumption of partiality". If the claimed inability to receive a fair trial can be established, it must, at this point, await further proof to be developed during the process of the *voir dire*. The responsibility here, as in every trial, is that the Trial Judge be vigilant to insure that the preconceptions and attitudes asserted by the study do not infect or in any manner impair the adjudicating process. Mindful of the warnings enun-

ciated in the statistical survey, should "disqualifications for cause become legion" making the *voir dire* "a hopelessly burdensome and futile process" (*People v. Culhane,* 33 N Y 2d 90, 110, n. 4), appropriate relief must at that time be available to petitioners. Until the study's conclusions can be tested in the context of the *voir dire* examination, the relief requested in the application before us is premature. Present — Marsh, P. J., Moule, Mahoney, Goldman and Del Vecchio, JJ.