OPINION.
This is an appeal by the state of Ohio from an order of the Court of Common Pleas of Butler County, Ohio, journalized August 12, 1996, the body of which is:
 This matter having come before the court upon the motion of the defendant, John Crist, to quash the indictment on the grounds that the Grand Jury proceeding which resulted in the indictment herein was flawed, and the court being fully advised, does hereby grant same. Speedy trial provisions for the ninety (90) days preceding the date of this entry are charged to the court and not to the State of Ohio.
 The State may appeal this order or re-present this matter to the Grand Jury or take other actions as authorized by law. All other pending motions are rendered moot by this order.
According to the record, the defendant-appellee, John Crist, captioned the motion which is the subject matter of the entry as one to "Quash/Dismiss the Indictment," and brought it in reliance upon Crim.R. 6. That rule of criminal procedure provides the grounds upon which a motion to dismiss an indictment may be made but makes no allusion to a motion to quash one. It is, then, in harmony with Crim.R. 12(A), which provides:
 Pleadings in criminal proceedings shall be the complaint, and the indictment or information, and the pleas of not guilty, not guilty by reason of insanity, guilty, and no contest. All other pleas, demurrers, and motions to quash are abolished. Defenses and objections raised before trial which heretofore could have been raised by one or more of them shall be raised only by motion to dismiss or to grant appropriate relief, as provided in these areas.
The confusion in terms, however, is not legally significant to the resolution of the issues raised by the appellant's single assignment of error and its predicate. Historically, a motion to quash was employed as a device in proceedings in habeas corpus to dismiss or annul the writ. It operated as a demurrer, viz., an objection by a movant to an opponent's pleading alleging that the movant need not answer it for some defect in law in the pleading. The demurrer, in modern civil practice, has been replaced effectively by Civ.R. 12(B)(6), which provides for dismissal when a complainant fails to state a claim upon which relief can be granted. See 64 Ohio Jurisprudence 3d (1985) 391, Jury, Section 110. Since Crist's motion was in the plural, it was sufficient to bring before the court the issue of dismissal of the indictment despite its reference to the inapposite basis of quashing it. Moreover, the state lodged no objection to the form of Crist's motion.
The completion of this preamble brings us to consideration of the assignment of error and the argument underpinning it. The state of Ohio submits that the court erred in granting the motion, stating the issue as being:
 Where there has been no demonstration of prejudice from the fact that a witness, an assistant prosecuting attorney, was present during the testimony of other witnesses in the grand jury proceeding, the trial court errs in quashing the indictment based only upon a perceived inference of impropriety.
On December 19, 1995, the Butler County Grand Jury returned an indictment, the body of which is:
 THE JURORS OF THE GRAND JURY OF THE STATE OF OHIO, within and for the body of the County aforesaid, on their oaths, in the name and by the authority of the State of Ohio, do find and present that on or about April, 1987 through August, 1993, at Butler County, Ohio, JOHN CRIST, MARVIN WILLS, and PATRICIA WILLS did, with purpose to deprive the owner of certain property worth $100,000 or more, knowingly obtain control over such property without the consent of the owner or person authorized to give consent, which offense is a felony of the second degree, in violation of the Ohio Revised Code, Title AGGRAVATED THEFT, Section 2913.02(A)(1), and against the peace and dignity of the State of Ohio.[1]
The factual background of this case is given to us by the several transcripts of proceedings filed as parts of the record, including those before the grand jury.
It is unquestioned that the indictment resulted from the professional behavior of Crist, then an attorney licensed to practice in Ohio, in his handling of the estates of August and Mary Belle Schmidt, deceased, in the Butler County Probate Court.[2] The Schmidts, who were husband and wife, died separately and their combined estates were valued at between 1.8 and 2.8 million dollars. August died in mid-1986, and Crist opened that estate in February 1987. Mary Belle died in April 1987.
Sometime in late 1991, two beneficiaries of one of the trusts established under the will of Mary Belle became concerned when they were unsuccessful in obtaining information from Crist in his capacity as the attorney for the estate. The beneficiaries were residents of Virginia and their concerns caused them to contact Tim Carlson, an attorney who practices in Butler County privately and, at the time germane to this case, was serving as an assistant to John F. Holcomb, the prosecuting attorney for that county. According to Carlson, he found the estates to be in such disarray that he was unable to ascertain the true value of the assets and could only approximate them as being between 1.8 and 2.8 million dollars. Resultantly, Carlson filed petitions in the probate court to remove Crist as attorney for the estates and to remove Marvin and Patricia Wills as the executors of the estates. The probate court ordered the removal of Crist and the Willses, and appointed Carlson as administrator of the Schmidt estate, with the will annexed, trustee of the trust in question and attorney for the trustee.
After those appointments, Carlson moved the probate court to order Crist to return moneys paid to him from the estate as fees,[3] as well as to order the Willses to return fees paid them as executors. Eventually, the Willses settled the claim against them through the probate court. In the fall of 1995, Carlson prepared for the prosecuting attorney, Mr. Holcomb, a summary of Carlson's probe of the activities he had uncovered. Carlson then learned that a special prosecutor, Steven M. Tolbert, the representative of the state in this appeal, had been appointed and that all the judges of the Butler County Court of Common Pleas had recused themselves.
On December 14, 1995, the events which culminated in the dismissal of the indictment began to transpire. Mr. Tolbert, as special prosecutor, called a series of witnesses to present the facts to the grand jury, Carlson being one of that group. The evidence adduced was sufficient to persuade the grand jury to return the true bill quoted supra, subscribed by the foreperson of the grand jury five days later.
On July 15, 1996, the Hon. William B. Stapleton, a visiting judge sitting because of the recusals of the incumbent judges, conducted an evidentiary hearing upon, inter alia, Crist's motion to "quash/dismiss" the indictment. Mr. Tolbert was called as a witness by Crist as if on cross-examination.
Mr. Tolbert testified that Mr. Holcomb solicited his services as a special prosecutor because of the potential conflict of interest stemming from the involvement of Carlson in the case in his dual identities as administrator of the estate and as an assistant prosecutor. He knew Carlson was not going to prosecute the possible case against Crist, that he was a member of the staff of the civil division of Mr. Holcombs office, and that he would never have appeared previously before the grand jury investigating Crist. Carlson was the first witness to testify before the grand jury, and he presented what he had discovered in the course of his investigation of Crist's handling of the estates and remained in the room with the grand jury during the testimony of the additional witnesses. Carlson was allowed to remain because, in Mr. Tolberts words, he "had worked the case up," and was there "to help me [Tolbert] if I needed help" and to respond to possible questions from any grand juror.
The gist of Crist's motion was that because Carlson was present during all the testimony of all the witnesses examined before the grand jury and was himself a witness, Crist was deprived of his constitutional right to indictment by a grand jury, and that both Crim.R. 6 and R.C. 2939.10 were violated. Crist, upon those premises, argued that:
 [T]he indictment against the defendant has been produced without the benefit of secrecy, without any objectivity and in the obvious face of conflict, and without a separation of witnesses, and obtained by a person who is not a prosecutor on the case but an advocate with an obvious interest in the outcome.
Mr. Tolbert maintained then, and continues to maintain, that Crim.R. 6(D) authorizes the presence of a prosecuting attorney while a grand jury is in session, and that Carlson was an assistant prosecuting attorney "present before the grand jury to give information." Moreover, he cited, and relies here, on the following provisions of R.C. 2939.10:
 The prosecuting attorney or assistant prosecuting attorney may at all times appear before the grand jury to give information relative to a matter cognizable by it, or advice upon a legal matter when required. The prosecuting attorney may interrogate witnesses before the grand jury when the grand jury or the prosecuting attorney finds it necessary, but no person other than the grand jurors shall be permitted to remain in the room with the jurors while the jurors are expressing their views or giving their votes on a matter before them.
Crim.R. 6(D) is in the same vein:
 (D) Who may be present. The prosecuting attorney, the witness under examination, interpreters when needed and, for the purpose of taking the evidence, a stenographer or operator of a recording device may be present while the grand jury is in session, but no person other than the jurors may be present while the grand jury is deliberating or voting.
It is important to note at this juncture that there is neither a claim nor any evidence that Carlson, or any other person, was present while the grand jury deliberated or voted.
It is equally important to note that this appeal does not stem from an original challenge to the array or to an individual juror. Crim.R. 6(B)(1) and (2) provide, in pertinent part:
 Challenges. The prosecuting attorney, or the attorney for a defendant who has been held to answer in the court of common pleas, may challenge the array of jurors or an individual juror on the ground that the grand jury or individual juror was not selected, drawn, or summoned in accordance with the statutes of this state. Challenges shall be made before the administration of the oath to the jurors and shall be tried by the court.
 Motion to dismiss. A motion to dismiss the indictment may be based on objections to the array or on the lack of legal qualification of an individual juror, if not previously determined upon the challenge.
* * *
Procedurally, then, technical defects and irregularities in the selecting, summoning and impaneling of a grand jury must be called to the attention of the trial court by challenge before the jury is impaneled and sworn. See 64 Ohio Jurisprudence 3d (1985) 392, Jury, Sections 111 and 112.
The order from which this appeal derives does not specify what caused the indictment to be, in the visiting judge's opinion, flawed. In the colloquy Judge Stapleton initiated in the proceedings on August 12, 1996, in which he announced his decision on, inter alia, Crist's motion, he said:
 I think all of us are also aware of the importance that the grand jury proceeding — I won't use the word tainted, be tainted — but be used in, or in a manner which would infer some impropriety.
 Now, I want to say this. I've reviewed the record here, and the court's rulings are going to be adverse to the State, but I want to make it clear that I do not feel that Mr. Tolbert, in any way — He relied on a statute as he set forth. I disagree completely with that reliance. Obviously, he has a right to his opinion, and will therefore have the right to go on, beyond, to the Court of Appeals. I do not feel, though, that his use of the statute as he used it was in any way intended to do anything illegal; * * *
The reference to the importance of the grand jury to the administration of law gives us the bedrock for our resolution of the issues in this appeal. We can find no way in which to convey our conviction that the sanctity of the grand jury cannot be, because it must not be, questioned in law other than to quote at length the sweeping language in the opinion delivered by Justice Lewis F. Powell, Jr., in United States v. Calandra (1974),414 U.S. 338, 343-345, 94 S.Ct. 613, 617-618:
 The institution of the grand jury is deeply rooted in AngloAmerican history. In England, the grand jury served for centuries both as a body of accusers sworn to discover and present for trial persons suspected of criminal wrongdoing and as a protector of citizens against arbitrary and oppressive governmental action. In this country the Founders thought the grand jury so essential to basic liberties that they provided in the Fifth Amendment that federal prosecution for serious crimes can only be instituted by "a presentment or indictment of a Grand Jury." Cf. Costello v. United States, 350 U.S. 359, 361-362, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956). The grand jury's historic functions survive to this day. Its responsibilities continue to include both the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions. Branzburg v. Hayes, 408 U.S. 665, 686-687, 92 S.Ct. 2646, 2658-2659, 33 L.Ed.2d 626 (1972).
 Traditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law. No judge presides to monitor its proceedings. It deliberates in secret and may determine alone the course of its inquiry. The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical, procedural and evidentiary rules governing the conduct of criminal trials. "It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime." Blair v. United States, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919).
 The scope of the grand jury's powers reflects its special role in insuring fair and effective law enforcement. A grand jury proceeding is not an adversary hearing in which the guilt or innocence of the accused is adjudicated. Rather, it is an ex parte investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person. The grand jury's investigative power must be broad if its public responsibility is adequately to be discharged. Branzburg v. Hayes, supra, 408 U.S., at 700, 92 S.Ct., at 2665; Costello v. United States, supra, 350 U.S., at 364, 76 S.Ct., at 409.
* * *
 The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence, Costello v. United States, supra; Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021
(1910); or even on the basis of information obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination, Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321
(1958). [Emphasis ours.]
In Costello v. United States (1956), 350 U.S. 359, 363,76 S.Ct. 406, 408, Justice Hugo L. Black wrote for the court:
 In Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 4, 54 L.Ed. 1021, this Court had to decide whether an indictment should be quashed because supported in part by incompetent evidence. Aside from the incompetent evidence "there was very little evidence against the accused." The Court refused to hold that such an indictment should be quashed, pointing out that "the abuses of criminal practice would be enhanced if indictments could be upset on such a ground." 218 U.S. at page 248, 31 S.Ct. at page 4. The same thing is true where as here all the evidence before the grand jury was in the nature of "hearsay." If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more. [Emphasis ours.]
The case of State ex rel. Kynard v. Court of Common Pleas (1980), 62 Ohio St.2d 308, 405 N.E.2d 719, presented the Ohio Supreme Court with a factual situation wherein it was required to decide whether to issue a writ of prohibition to bar the Court of Common Pleas of Lucas County from proceeding upon an indictment charging aggravated murder. The relator contended that, by virtue of alleged undue influence exerted by the prosecuting attorney upon the grand jury returning the indictment, the trial court was without jurisdiction to hear the case. The court denied the writ, holding, inter alia, that alleged irregularities in the proceedings of the grand jury do not deprive the trial court of jurisdiction to proceed upon the indictment.
In State v. Freeman (1985), 20 Ohio St.3d 55, 485 N.E.2d 1043, two county commissioners indicted for bribery and other offenses filed pretrial motions to dismiss the indictments on the ground that irregularities in the grand jury proceedings rendered the indictments void. The defendants alleged that two judges, apparently members of the court of common pleas who had participated in the selection of the special grand jury which returned the indictments, improperly appeared as witnesses before the grand jury. The fundament of such contention was that the judges prejudiced the defendants by lending their authority and credibility to their testimony and, resultantly, tainted the proceeding so as to render the indictments void. The court declined to issue the writ, holding that the defendants had been unable to indicate specifically any improprieties in their testimony, and that no prejudice would be presumed under the circumstances. When deciding State v. Davis (1988), 38 Ohio St.3d 361,528 N.E.2d 925, the court held upon authority of United States v. Calandra, supra, that an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence.
The Court of Appeals for Montgomery County, in State v. Patterson (1989), 63 Ohio App.3d 91, 577 N.E.2d 1165, concluded that a motion to dismiss an indictment for failure to state a violation of any law was analogous to a motion pursuant to Civ.R. 12(B)(6). The purpose of such a motion is to test the sufficiency of the indictment without regard to the quantity or quality of the evidence. Resultantly, the court held, the proper determination is whether the allegations contained in the indictment make out an offense under Ohio criminal law. If an offense is appropriately stated in the indictment, it is premature to determine, in advance of trial, whether the state can prove the accused to be guilty. Therefore, the court of appeals affirmed the order of the trial court overruling the motion to dismiss.
Here, the indictment, as returned by the Butler County Grand Jury, was valid on its face. It was, and is, sufficient to state a violation of the criminal laws of the state of Ohio, and it is enough to call Crist for trial of the charge on its merits.
Resultantly, we hold that where a court dismisses an indictment because it perceives that such indictment is "flawed" for reasons other than those set forth by statute and rule of procedure, it errs as a matter of law.
The single assignment of error is, accordingly, well taken and is sustained. In so ruling, we note that the asserted prejudice to Crist of Carlson's continued presence before the grand jury is not material. That, simply put, is not germane to the question of dismissal of the indictment. [4]
For the reasons given, the judgment of the Butler County Court of Common Pleas is reversed and this cause is remanded for further proceedings according to law.
DOAN, P.J., and PAINTER, J., concur.
Judge Rupert A. Doan, from the Court of Appeals, First Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
Judge Mark P. Painter, from the Court of Appeals, First Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
Judge Raymond E. Shannon, Retired from the Court of Appeals, First Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Opinion.
[1] On August 12, 1996, the Butler County Court of Common Pleas journalized an order dismissing the indictment of defendants Marvin Wills and Patricia Wills upon their motion. On August 16, 1996, the state of Ohio filed its notice of appeal of that order. On December 9, 1996, the Court of Appeals for Butler County granted the state's motion to dismiss that appeal, and no issue with respect to marvin and Patricia Wills is raised in the appeal sub judice.
[2] The court has been advised that John Crist is no longer a licensed practitioner.
[3] According to Carlson, Crist had withdrawn in excess of a quarter of a million dollars in fees without application to or allowance by the probate court, and when Crist filed his first accounting for the estate, the corpus had dwindled to $563,000. The bill of particulars specified that between June 10, 1987, and August 24, 1993, Crist received some $409,000 without approval.
[4] This decision is not to be read or interpreted as an approval or condemnation of the technique employed in this case.