**Sylvester K. STEVENS, Plaintiff,**

v.

**Helen C. FRICK, Defendant.**

**No. 66 Civ. 2287.**

United States District Court
S. D. New York.

Oct. 17, 1966.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for plaintiff.

Milbank, Tweed, Hadley, McCloy, New York City, and Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., for defendant.

OPINION

TYLER, District Judge.

Sylvester K. Stevens, an historian and author, seeks the aid of this court to prevent what he and his counsel term "a blatant violation of the constitutional right of free. press." Specifically, Ste-

vens asks that the defendant, Helen Clay Frick, be enjoined from further prosecuting an action now pending against him in the Court of Common Pleas of Cumberland County, Pennsylvania.

Jurisdiction of this court is said by plaintiff to rest upon two provisions of the Judicial Code, 28 U.S.C. §§ 1331 and 1343. Dr. Stevens now moves for a preliminary injunction; Miss Frick cross-moves to dismiss the action pursuant to Rules 12(b) (1) and (6) F.R.Civ.P. on the grounds that this court lacks jurisdiction of the subject matter and that the complaint fails to state a claim for which relief can be granted.

The relevant facts upon these motions are simple and undisputed. In December 1964, Sylvester Stevens published, through Random House, a one-volume general history of Pennsylvania entitled *Pennsylvania, Birthplace of a Nation.* Miss Frick apparently received a copy of the book for Christmas in 1964. Certain passages therein dealing with her deceased father, Henry Clay Frick, the well-known Pittsburgh industrialist and Carnegie partner, were, in her opinion, erroneous and unfair. Concluding that Stevens' portrayal tarnished "the reputation of one of the greatest citizens of Pennsylvania", she wrote him a letter of complaint. Shortly thereafter, on January 19, 1965, Miss Frick commenced a suit in equity in the Court of Common Pleas of Cumberland County asking that Dr. Stevens be permanently enjoined from distributing, or permitting others to distribute his book. Despite allegations in her Cumberland County complaint that she "has unjustly suffered and will continue to suffer a loss of reputation and public esteem", she seeks no money damages.

The trial of Miss Frick's case was had before the Cumberland County court without a jury in the fall of 1965. By specific allegations in his answer and by appropriate motions during the trial, Dr. Stevens squarely raised his principal de-

fense that an injunction as sought by Miss Frick would violate his First Amendment right of freedom of expression. The Pennsylvania court has reserved decision on all substantive issues in the case, including the constitutional issue raised by Dr. Stevens as a ground for non-suit.[1] Counsel before this court state that the decision of the Cumberland County judge may be forthcoming later this fall.

Notwithstanding this status of the Pennsylvania action, Dr. Stevens has now moved in this court for a temporary injunction. He does not explain why he has waited so many months to apply for such drastic relief, nor does he allege that the Pennsylvania court has rejected his constitutional arguments. He states simply that "the mere pendency of that action is a burden to [him] and a deprivation of his constitutional right of freedom of expression and the public's right to read".

The question to be resolved here is whether, under the foregoing circumstances, a federal district court can enjoin the Pennsylvania court from any further proceedings in the Frick suit. Counsel for Dr. Stevens have argued that the fundamental issue before this court is, "the scope of the constitutional right of free press". As already indicated, I disagree. Even if I were to assume that Dr. Stevens' constitutional arguments should prevail, the basic issue here is the power of this court to interfere with the Pennsylvania court. A corollary question is whether, assuming this court does have such "power" or jurisdiction, it should be exercised.

To begin with, the federal "anti-injunction" statute, 28 U.S.C. § 2283, would seem to effectively bar Dr. Stevens from the relief he seeks here. That statute provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as express-

---

1. On July 13, 1966, the Pennsylvania court did hand down a ruling excluding certain evidence offered by the parties at trial.

Dr. Stevens apparently is of the opinion that this ruling was or may be prejudicial to his defenses to the action.

ly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

Concededly, neither of the last two exceptions are applicable in this case. Counsel for Dr. Stevens maintain, however, that express Congressional authorization for a stay is to be found in a section of the Civil Rights laws, R.S. § 1979, 42 U.S.C. § 1983.

That statute provides that:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." [2]

Before determining whether Section 1983 is a valid exception to the firm command of the anti-injunction statute, it is first necessary to inquire if Miss Frick's Pennsylvania litigation is "under color of any statute, ordinance, regulation, custom or usage * * *" of a state—i. e. that the suit in Cumberland County constitutes the requisite degree of "state action" to bring it within the ambit of the former statute. See Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Counsel for Dr. Stevens, citing Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), asserts that Pennsylvania's provision of a forum, coupled with service of process by an authorized state officer, constitutes sufficient state action to bring his request within the terms of section 1983.

Counsel's reliance on Shelley v. Kraemer is misplaced. The "judicial action" in *Shelley* is easily distinguishable from that presented here. *Shelley* dealt with a situation in which the state had provided "the full coercive power of government to deny to petitioners, on the grounds of race or color, the enjoyment of property rights in premises which petitioners [were] willing and financially able to acquire and which the grantors [were] willing to sell. The difference between judicial enforcement and non-enforcement of the restrictive covenants [was] the difference to petitioners between being denied rights of property available to other members of the community and being accorded full enjoyment of those rights on an equal footing." Id. at 19, 68 S.Ct. at 845. Noting further that the states had a long-standing policy of enforcing restrictive covenants, and that the Fourteenth Amendment was, in significant part, designed to insure equal property rights to all races, the Court held that judicial enforcement of these racially restrictive agreements was prohibited.

The situation in which Dr. Stevens now finds himself is substantially dissimilar. The mere fact that the Frick lawsuit is pending in a Pennsylvania court does not warrant a conclusion that that Commonwealth is using or providing its "full coercive power" to prevent Dr. Stevens from speaking or writing. Indeed, it does not appear that Dr. Stevens' rights have been affected at all, and it is highly questionable whether they are even threatened by the state. Pennsylvania has no long-standing policy of discrimination against authors and historians or their right of free expression. Counsel have not cited, and I have not been able to find, any Pennsylvania cases which enjoined or prevented authors from expressing their opinions concerning historical events or personages.

In Monroe v. Pape, supra, 365 U.S. at 184, 81 S.Ct. at 482, the Supreme Court applied to Section 1983 the following definition of "state action" which it had set forth in United States v. Classic, 313 U.S. 299, at 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941): "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is

---

**2.** See also 28 U.S.C. § 1343, the jurisdictional statute implementing section 1983.

clothed with the authority of state law * * * " The only "power" presently being exercised or initiated by Miss Frick is the common "right" of commencing a civil action against another to obtain relief from real or imagined wrongs. It matters not that Miss Frick's claims may prove to be ill-founded; our courts, both state and federal, have always been open to litigation of complaints irrespective of how baseless they eventually prove to be. Providing a forum to determine the rights and liabilities in such an action does not clothe the plaintiff with the authority of the state in the sense that Dr. Stevens suggests.[3] If it did, much civil litigation between private parties in state courts would be subject to restraint by a federal court—clearly a state of affairs contemplated neither by law nor by common sense.

■ Since Dr. Stevens has not brought himself within the ambit of Section 1983, this would be sufficient reason alone to dismiss his claims in this court. But there is another reason for denying him the injunction he seeks. Even if it be assumed that the Frick suit constitutes state action, this would not necessarily make his case an "exception" to the anti-injunction statute. The question of whether Section 1983 is such an exception has never been passed upon by the Supreme Court or by the Court of Appeals for this circuit. Other circuits are split on the question.[4] Even in those circuits which characterize section 1983 as an express authorization by Congress to enjoin state court proceedings, however, the assertion is tempered by the application of "familiar rules of comity" and an awareness of the "delicate balance" of federal-state relationships. See Baines v. City of Danville, 337 F.2d 579 (4th Cir. 1964) and cases therein cited. Thus, even assuming the requisite degree of state action and, further, that section 1983 can properly be viewed as Congressional authority to stay improper state action, I am constrained to conclude that interference by this court with the Pennsylvania action would constitute an unwarranted distortion of sensible rules of comity.

■ Where there is a significant danger of federal-state conflict, federal courts have been most reluctant to enjoin state proceedings.[5] While they have on occasion enjoined criminal prosecutions, "[i]t is generally to be assumed that state courts and prosecutors will observe constitutional limitations as expounded by this Court, and that the mere possibility of erroneous initial application of constitutional standards will usually not amount to the irreparable injury necessary to justify a disruption of orderly state proceedings". Dombrowski v. Pfister, 380 U.S. 479, 484–485, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22 (1965).

As indicated heretofore, the "mere pendency" of the Pennsylvania action has not demonstrably impaired Dr. Stevens' constitutional rights, the sales of his book, or the public's right to read. He now awaits the decision of the Cumberland County court before which he has effectively raised the constitutional defense which he seeks to argue here. Even if it be assumed that the trial court will rule against him, Dr. Stevens will have full recourse to the appellate courts of Pennsylvania and, if necessary, to the Supreme Court of the United States. Under

---

3. See Bottone v. Lindsley, 170 F.2d 705 (10th Cir. 1948); Skolnick v. Spolar, 317 F.2d 857 (7th Cir. 1963). While the facts are not precisely in point, these authorities declare by way of *obiter dictum* that mere resort to state court processes by private litigants does not constitute action under color of state law within the meaning of Section 1983.

4. An extensive analysis of what positions have been taken on this question can be found in Baines v. City of Danville, 337 F.2d 579 (4th Cir. 1964).

5. In the analogous area of removal of civil rights cases to the federal courts, the same policy considerations have recently been reaffirmed. See City of Greenwood, Miss., v. Peacock, 384 U.S. 808, 828, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966).

658

such circumstances, this court cannot and will not interfere.

The motion for a preliminary injunction is denied; the motion to dismiss the complaint is granted. It is so ordered.

