**Narciso Rabell MARTINEZ, Plaintiff,**

v.

**COMMONWEALTH OF PUERTO RICO et. al., Defendants.**

**Civ. No. 191–71.**

United States District Court,
D. Puerto Rico.

Jan. 18, 1972.

On Motion for Stay April 6, 1972.

Luis F. Abreu Elias, Rio Piedras, P. R., for plaintiff.

Gilberto Gierbolini, Sol. Gen., Candita R. Orlandi, Asst. Sol. Gen., Dept. of Justice, San Juan, P. R., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

TOLEDO, District Judge.·

This is an action filed on March 16, 1971, by plaintiff, Narciso Rabell Martinez, requesting of this Court to grant him injunctive, declaratory and other equitable relief under the provisions of Title 28, United States Code, Sections 1331, 1343 and 2201; Title 42 United States Code, Sections 1981–83, and the Sixth, Ninth and Fourteenth Amendments to the Constitution of the United States of America. These remedies are sought on the alleged basis that plaintiff's civil rights, as guaranteed under Title 42, United States Code, Section 1983, would be violated if the Courts of the Commonwealth of Puerto Rico are not enjoined from continuing criminal proceedings already initiated and pending against him.

Plaintiff contends that due to the excessive and continuous adverse publicity given by the local press, including press statements made by high government officials, in criminal proceedings already initiated and pending against him in the courts of the Commonwealth of Puerto Rico, his federal civil rights have been violated and thus it will be impossible for him to have a just and fair trial in said criminal proceedings.

On April 1, 1971, this Court issued an Order granting a temporary restraining order [1] and requiring the defendants to show cause why they should not be enjoined preliminarily and permanently from continuing proceedings against plaintiff in the Criminal Cases G–69–2813 and 2814 filed against him in the Superior Court of Puerto Rico, San Juan Part. The defendants filed on April 7, 1971, a motion to dismiss the complaint on the ground that this Court lacked jurisdiction to entertain this action: (a) by virtue of the decision of the Supreme Court of the United States delivered on February 23, 1971, in the case of Younger v. Harris et al., 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); (b) for the issuance of an injunction to stay criminal prosecution in a State court is in contravention of an express Congressional precept, as enunciated in Title 28, United States Code, Section 2283; and (c) because the complaint fails to state a cause of action within the meaning of Title 42, United States Code, 1981–83.

1. Said Temporary Restraining Order expired on April 11, 1971. The plaintiff never moved this Court to extend it.

Defendants' motion to dismiss was heard on April 8, 1971, and was denied on the same date.

On April 13, 1971, the defendants filed an "Answer to Order to Show Cause, Amended Motion to Dismiss and Opposition to the Entering of a Preliminary and Permanent Injunction." In said pleading, defendants denied each and every allegation of the complaint; admitted that the cases pending against plaintiff in the local courts had been the subject of certain publicity in the communication media, but denied that such publicity would make it impossible for plaintiff to have a fair and just trial in said forum. In the same pleading the defendants also incorporated all the allegations contained in their motion to dismiss of April 7, 1971, and alleged further: (1) that defendant, San Juan Superior Court, was not a person within the meaning of the Civil Rights Act, Title 42, United States Code, Section 1983, nor under Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); and that, (2) inasmuch as defendant, Superior Court Judge Vicente López Pérez disqualified himself to continue as judge in plaintiff's case, the complaint was left defendantless.

On May 19, 1971, the Court granted plaintiff leave to include additional party defendants to the original complaint.

Extensive oral and documentary evidence on behalf of the parties was heard and admitted into evidence at evidentiary hearings held on April 13, 14, May 18 and June 21, 23, 28 and 29, 1971.

On June 9, 1971, the respondents filed another motion to dismiss the complaint, incorporating in it all the previous allegations contained in their motions to dismiss of April 7 and April 13, 1971. Plaintiff further alleged that this Court lacked jurisdiction to entertain the action as to the Commonwealth of Puerto Rico, one of the new party defendants included in the original complaint as granted by this Court on May 19, 1971, on the ground that: (1) the Commonwealth of Puerto Rico is neither a person nor a corporation within the meaning of the Civil Rights Act (Title 42, United States Code, Section 1983); and (2) the Commonwealth of Puerto Rico enjoys sovereign immunity and cannot be sued in the federal courts without its consent. This motion was argued on June 23, 1971, the matter was taken under advisement, and simultaneous memoranda requested. The evidentiary hearing was resumed on that same date and terminated on June 29, 1971: at which date the parties were allowed thirty (30) days to file simultaneous memoranda of law in support of their respective contentions.

On the basis of the foregoing, the files and record in the above captioned cause, and after considering the evidence which was introduced by the parties herein, and reviewing the memoranda submitted, and otherwise being duly advised on the premises, the Court makes the following:

## FINDINGS OF FACT

Informations in Criminal cases Number G–69–2813 and 2814, were filed against Narciso Rabell Martínez, plaintiff herein, on April 29, 1969, before the Superior Court of Puerto Rico, San Juan Part, charging him with violations of Articles 11 and 12 of Law Number 67 of 1934, commonly known as the Explosives Law of Puerto Rico (Title 25, Laws of Puerto Rico Annotated, Section 481 et seq.), for acts which allegedly occurred on February 15, 1969.

After several continuances requested by said plaintiff and granted, on February 6, 1970, he moved the Commonwealth Court, under Rule 247 of the Rules of Criminal Procedure of the Commonwealth of Puerto Rico, Title 34, Laws of Puerto Rico Annotated, to dismiss the charges pending against him, on the ground that the adverse publicity received in said cases from the local press, including press statements made by high government officials of Puerto Rico, had created a hostile climate against him and had denied him his right to a just and fair trial.

Said Motion to dismiss came on for hearing on October 5, 1970, after the

Court had granted plaintiff further extensions of time requested. As a result of said hearing, the Superior Court of Puerto Rico, San Juan Part, entered, on October 21, 1970, a five-page resolution denying plaintiff's motion to dismiss in view of the fact that the adverse publicity allegedly received in plaintiff's cases, as viewed from the press statements attached to said motion: (a) limits itself to general information on what happened since the arrest of the accused until the indictment in the District Court; (b) no inflammatory language appeared from said press statements; (c) the facts of the indictment were not commented, nor they attempted to formulate policies for the judiciary. The Court further considered that the voir dire of the jury panel composed of 4,000 candidates provided the accused with all the opportunities to investigate all the candidates, and to choose twelve jurors capable of rendering a just and impartial verdict based solely on the evidence presented and in the light of the applicable law.

Plaintiff then requested a stay of the Commonwealth Superior Court proceedings and filed a petition before the Supreme Court of Puerto Rico for a writ of certiorari, seeking a review of the above mentioned resolution of the Commonwealth Superior Court. The writ was denied on December 9, 1970.

On March 11, 1970, plaintiff moved the Superior Court of Puerto Rico, San Juan Part, for an indefinite continuance of the criminal proceedings on the same ground of the alleged adverse publicity received in his case. Said motion was denied and the trial of the cases was finally set for April 6, 1971. It was after this denial for an indefinite continuance, that plaintiff filed this complaint before this Court.

2. Section 2283, provides as follows:
    "A Court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

3. See Sierra Meléndez v. Rivera Brenes, D.C., 331 F.Supp. 898, Civil No. 512-71,

In view of the above Findings of Fact, the Court makes the following:

## CONCLUSIONS OF LAW

■ Under the facts and record of this case, the Court does not have sufficient grounds to exercise its discretion in favor of plaintiff, and thus interfere with and halt proceedings already initiated in the courts of the Commonwealth of Puerto Rico. Such action would be in contravention of the express Congressional precept, as enunciated in the Anti-Injunction Act, Title 28, United States Code, Section 2283.[2] Moreover concurring with the great weight of authority, we have held that the Civil Rights Act, Title 42, United States Code, Sections 1983 et seq., has not superseded, abrogated, suspended or modified the Anti-Injunction Act.[3]

In the case of Valentín Pérez v. Gil, Civil No. 695–69, unpublished Memorandum and Order of March 31, 1970, it was held as follows:

"This statute, originally adopted in 1793 (Act of March 2, 1793), has been continued in effect by the 1948 Judicial Code Revision. (62 Stat. 968, 28 U.S.C. 2283). Its purpose is to prevent use of federal jurisdiction for the purpose of staying or interfering with proceedings currently pending in state courts. The section is comprehensive in scope and applies to all steps taken by the state court and by its ministerial officers and to any supplementary or ancillary proceeding taken with a view to making the suit or judgment effective, including execution on a judgment. Hill v. Martin, 296 U.S. 393, 403; 56 S.Ct. [2] 78; 80 L.Ed. 293 (1935). See Warren, Federal and

Order of September 20, 1971. (J. Fernández Badillo); Rodríguez Rivera v. Maiz, D.C., 331 F.Supp. 713, Order of April 15, 1971 (J. Cancio); Valentín Pérez v. Gil, etc., Civil No. 695–69, unpublished Memorandum and Order of March 31, 1970 (J. Cancio).

State Court Interference, 43 Harv.L. Rev. 345, 366–378 (1929–30).

It is evident that "proceedings", as defined by the Supreme Court, would be stayed in the Superior Court, San Juan Part, if the injunctive relief requested by plaintiff herein were granted. Cf. The American Law Institute's Study of the Division of Jurisdiction Between State and Federal Courts, (1969) at p. 51, which convincingly recommends express inclusion of the state of judgment enforcement within the Anti-Injunction Statute. (28 U.S. C.A. § 2283).

Section 1983 of Title 42, U.S.C.A. provides:

Every person who under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the part injured in an action at law, suit in equity, or other proceeding for redress.

Section 1343 of Title 28, U.S.C.A. provides:

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

.    .    .    .    .    .

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal right of citizens or of all persons within the jurisdiction of the United States.

The Civil Rights Act upon which plaintiff bases his claim for relief has not superseded, abrogated, suspended or modified Section 2283 of Title 28 U. S.C.A., supra. Although it is still an open question whether, because plaintiff pleads a claim for relief under 42 U.S.C.A. § 1983, he thereby surmounts the obstacle of 28 U.S.C.A. § 2283,[4] the great weight of authority holds that the Civil Rights Act of 1871 does not authorize an injunction interfering with a state court proceeding.[5]

4. See § 1372 Commentary, 'Three-Judge Courts' in Study of the Division of Jurisdiction Between State and Federal Courts, p. 303, The American Law Institute (1969).

5. See Steffanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951); Norwood v. Parenteau, 228 F.2d 148 (8th Cir. 1955), cert. denied, 351 U.S. 955, 76 S.Ct. 852, 100 L.Ed. 1478 (1956); Mackay v. Nesbett, 285 F.Supp. 498 (D. Alaska 1968); Sheridan v. Garrison, 273 F.Supp. 673 (E.D.La.1967); Sarisohn v. Appellate Division, Second Department, Supreme Court of New York, 265 F.Supp. 455 (S.D.N.Y.1967); Brock v. Schiro, 264 F.Supp. 330 (E.D.La.1967); Thomas v. District Court of Thirteenth Judicial District, 270 F.Supp. 487 (D.Mont.1967); Richardson v. Dudley, 295 F.Supp. 181 (S.D.N.Y.1969); Stevens v. Frick, 259 F.Supp. 654 (S.D.N.Y.1966); aff'd, 372 F.2d 378 (2d Cir. 1967), cert. denied 387 U.S. 920, 87 S.Ct. 2034, 18 L.Ed.2d 973; Chaffee v. Johnson, 229 F.Supp. 445 (S. D.Miss.1964), aff'd 352 F.2d 514 (5th Cir.) cert. denied 384 U.S. 956, 86 S.Ct. 1582, 16 L.Ed.2d 553 (1966); Island Steamship Lines v. Glennon, 178 F.Supp. 292 (D.Mass.1959). While the Supreme Court has left the specific question open, see Cameron v. Johnson, 381 U.S. 741, 85 S.Ct. 1751, 14 L.Ed.2d 715 (1965); Dombrowski v. Pfister, 380 U.S. 479, 484 n. 2, 85 S.Ct. 1116, 14 L.Ed.2d 22, a majority of the circuits have held that 28 U.S.C. § 2283 prevails. Baines v. City of Danville, 337 F.2d 579 (4th Cir. 1964), cert. denied sub nom. Chase v. McCain, 381 U.S. 939, 85 S.Ct. 1772, 14 L.Ed.2d 702 (1965); Smith v. Village of Lansing, 241 F.2d 856 (7th Cir. 1957); Sexton v. Barry, 233 F.2d 220 (6th Cir. 1956), cert. denied, 352 U.S. 870, 77 S.Ct. 94, 1 L.Ed.2d 76. Wojcik v. Palmer, 318 F.2d 171 (7th Cir. 1963), cert. denied 375 U.S. 930, 84 S.Ct. 331, 11 L.Ed.2d 263 (1963), Sheridan v. Garrison, 415 F.2d 699, CA 5, 1969. Wilson v. Simon, 299 F.Supp. 305 (U.S.D.C. N.Ill.1969). Contra, Cooper v. Hutchinson, 184 F.2d 119 (3d Cir. 1950) and Tribune Review

This same reasoning was followed by the Supreme Court of the United States in the recent leading case of Younger v. Harris, 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, and its companion cases of Boyle v. Landry, 1971, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696; Samuels v. Mackell, 1971, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688; Pérez v. Ledesma, 1971, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701; Dyson v. Stein, 1971, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781, and Byrne v. Karalexis, 1971, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792, which opinions were delivered on February 23, 1971. In each of said cases the action was dismissed in view of the fundamental policy against federal interference with state criminal prosecutions, under which even irreparable injury is insufficient to warrant such interference unless injury is both great and immediate, and the threat to federally protected rights is one that cannot be eliminated by defense against a single criminal prosecution.[6]

■ One of the primary sources for this long-standing public policy against federal court interference with state court proceedings is the basis doctrine of equity jurisprudence that "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." Younger v. Harris, supra, 401 U.S. at pages 43, 44, 91 S.Ct. at page 750.

■ In applying the above norm to the instant case, this Court can only conclude that the injury plaintiff Narciso Rabell Martínez faces is solely that incidental to every criminal proceeding "brought lawfully and in good faith",[7] and where he has available state remedies to obtain a fair and just trial.[8] In this connection, it has been repeatedly held by the Supreme Court of the United States that a single prosecution, brought in good faith, is a risk to which all citizens are exposed, and that such prosecution is not a violation of any federally guaranteed civil rights. Beal v. Missouri Pacific R. R. Corp., 1941, 312 U.S 45, 49, 61 S.Ct. 418, 85 L.Ed. 577; Douglas v. City of Jeannette, 1943, 319 U.S. 157, 163, 63 S.Ct. 877, 87 L.Ed. 1324;

Publishing Co. v. Thomas, 153 F.Supp. 486 (W.D.Pa.1957) aff'd 3d Cir. 1958, 254 F.2d 883. While these two federal courts have reached a contrary result, significantly both courts, in the exercise of equitable discretion, refused to grant the injunction. An express authorization for injunctive relief within the meaning of Section 2283 has been held contained in the Civil Rights Act of 1964, 42 U.S.C.A. § 2000a–3(a), in Dilworth v. Riner, 5th Cir., 343 F.2d 226 (1965).

6. Recently, in the case of Sierra Meléndez v. Rivera Brenes et al., D.C., 331 F.Supp. 898, Civil No. 512–71, Opinion and Order of September 20, 1971 (J. Fernández Badillo), where plaintiff also attempted to secure an injunction under the Civil Rights Act, Title 42, United States Code, Section 1983, this Court cited Younger v. Harris, 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, as a reaffirmation of federal repugnance to intervene in pending state criminal proceedings.

7. Douglas v. City of Jeannette, 1943, 319 U.S. 157, 164, 63 S.Ct. 877, 87 L.Ed. 1324.

8. At the time plaintiff filed the instant injunctive action, he had the following available state remedies:
(a) in the pending criminal proceedings no jury has been selected yet, and at the proper time plaintiff will have the opportunity to voir dire said jury and inquire from each and every one of them if he has been influenced by the press statements made in his cases; (b) under Rule 113 of the Commonwealth Rules of Criminal Procedure, Title 34 Laws of Puerto Rico Annotated, plaintiff will also have the opportunity of challenging the whole panel as well as each juror individually; and (c) he has a whole gamut of appealable remedies, first, to the Supreme Court of Puerto Rico from the decision of the Superior Court on the attack he may care to make on the jury, and, if convicted, he may appeal the decision to the Supreme Court of Puerto Rico; and lastly, he may seek ultimate direct review from the Supreme Court of the United States under Title 28, United States Code, Section 1258.

Younger v. Harris, supra, 401 U.S. at page 49, 91 S.Ct. 746.

Plaintiff has neither alleged nor shown to this Court that his prosecution is being made in bad faith, or as harassment by the judicial officials of the Government of Puerto Rico. Cf. Dombrowski v. Pfister, 1965, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22. This alone is sufficient to preclude federal court intervention in state criminal proceedings. Younger v. Harris, supra, 401 U.S. at pages 48–49, 91 S.Ct. 746.

As to the declaratory judgment relief sought, it is settled law that in the absence of special circumstances, the same reasons precluding an injunction require denial of such relief as well, as ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the long-standing policy limiting injunction was designed to avoid. See Samuels v. Mackell, supra, 401 U.S. at

page 73, 91 S.Ct. 764; Valentin Pérez v. Gil, supra.[9]

In this cause the plaintiff presented expert testimony in support of his contentions. Dr. Wilfredo Vellón Ríos, Psychologist and Professor at the University of Puerto Rico, testified that the publicity received by plaintiff in the criminal cases pending against him must have certainly influenced initially the formation of attitudes of prospective jurors. However, on cross examination, Dr. Vellón Ríos admitted that attitudes are not fixed entities. With the excerpts of authorities offered and admitted into evidence on behalf of the respondents, and specifically on the findings of a study undertook by the Institute of Communications Research at the University of Illinois, as it appears on pages 89 and 90 of Chapter 5 from the Book "Crime and Publicity" by Alfred Friendly and Ronald L. Goldfarb, The Twentieth Century Fund, New York, 1967,[10] it was

9. In the opinion of Valentin Pérez v. Gil, supra, in relation to the declaratory judgment relief sought, this Court expressed the following:

It is clear that the prohibition of Section 2283 against Federal Court enjoining state court proceedings cannot be avoided by seeking a declaratory judgment. Brooks v. Briley, 274 F.Supp. 538 (D.C.Tenn.1967) aff'd 391 U.S. 361, 88 S.Ct. 1671, 20 L.Ed.2d 647 (1968); H. J. Heinz Co. v. Owens, 189 F.2d 505 (9th Cir. 1951), cert. denied 342 U.S. 905, 72 S.Ct. 294, 96 L.Ed. 677 (1952); Cunningham v. A. J. Aberman, Inc., 252 F. Supp. 602, 604 (D.C.Penn.1965); Comment, Federal Injunctions Against State Actions, 35 Geo.Wash.L.Rev. 744, 766 (1967). Cf. Currie, The Three Judge District Court in Constitutional Litigation, 32 U.Chi.L.Rev. 1, 14–16 (1964). The same principles of comity and federalism require that when injunctive relief is inappropriate, neither is relief appropriate under the declaratory judgment statute. Brooks v. Briley, supra, 274 F.Supp. at 553. Cato v. State of Georgia, 302 F.Supp. 1143, 1147 (D.C. Ga.1969), citing with approval Malone v. Emmet, 278 F.Supp. 193, 200 (M.D.Ala. 1967), stated:

"* * * a federal court should not, in the absence of special circumstances, intervene even by way of declaratory

judgment in state criminal prosecutions. Special circumstances, of course, will appear if it is necessary for the federal court to protect some overriding federally guaranteed rights * * *"

10. In said study "two model jury panel were exposed to newspaper stories about a hypothetical case to be tried, one to conservative restrained stories and the other to stories that were sensational and that contained prejudicial facts not to come out at trial (such as a prior criminal record). The panel were then asked to indicate their opinions about the defendant's guilt. Thereupon, mock trials were held according to the ordinary rules of evidence, and the jurors were instructed by the judge not to base their decisions on facts other than those developed at the trial. After the Trial, the jurors again indicated their opinions of the defendant's guilt or innocence. Those who had been exposed to the sensational and prejudicial stories came to the trial more convinced than their counterpart group of the defendant's guilt (64 per cent as opposed to 36 per cent). But after the simulated trial the difference in conclusions between the two groups diminished almost to the vanishing point, (of those with opinions, 25 per cent to 24 per cent voted 'guilty'; 72 per cent to 76 per cent voted 'not guilty'.)"

also established that the jury decides according to the testimony heard, the law in the case and the instructions given by the court.

The expert testimony of Dr. Luis Nieves Falcón, Sociologist and Professor of the University of Puerto Rico, failed to establish that all the candidates for jury service who were interviewed in a study conducted by him of the prospective jurors who would decide on the innocence or guilt of the accused, suffered from prejudice against alleged extremists and terrorists. In answering a question asked by the Court, the witness admitted that fifty-nine percent of those jury candidates were, according to questionnaires filed by them, radically prejudiced and biased against persons accused of acts of terrorism, and forty-one percent were conservatively liberal in their attitudes toward said persons. From said study, it therefore, follows, and the Court so finds, that in the selection of the jury to try the criminal charges pending, plaintiff has the choice of challenging even peremptorily all the jury candidates so openly prejudiced, and of choosing the necessary number of jury candidates from the remaining percentage with an unbiased and liberal attitude toward persons accused of acts of terrorism.

■ This Court also finds that the specific pretrial publicity had in plaintiff's cases, may have influenced the reader's opinion initially, but the normal courtroom precautions can undo any pretrial damage done by said press publications. Each individual juror who will finally try the cases pending against the plaintiff, is to reach a verdict based only on the specific facts and evidence presented to and admitted by the Court, and on the law of the case as given by the judge in his instructions to them.

■ It is also the opinion of this Court that in the instant case the plaintiff has failed to meet the burden of proving that he will suffer irreparable injury, both great and immediate, if the local proceedings against him are not stayed. Due to the fact that plaintiff is a person widely known in Puerto Rico, there was some publicity in his cases pending before the Commonwealth Court, but this publicity has not deprived the plaintiff of his right to a fair and just trial in said cases.

Plaintiff's main and only allegation in the complaint is that the adverse publicity received in said local proceedings has violated his federal constitutional rights thus depriving him of a just and fair trial. In support of his allegation, plaintiff cites the case of Sheppard v. Maxwell, 1966, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600.

■ A thorough examination and study of plaintiff's exhibits, consisting of press statements, reflects that the publicity received in the criminal cases pending against plaintiff before the Commonwealth Courts, is not the massive, pervasive and prejudicial publicity which would deprive him of his federal constitutional rights to a fair and just trial.

■ In addition to the fact that the factual situation in Sheppard v. Maxwell, supra, is totally distinguishable from the case at bar, the publicity received there is distinct from the publicity received in the instant case. The mere fact that the news media was informed of the arrest, accusation, probable cause hearing and arraignment of plaintiff herein, is not a violation of plaintiff's federally protected rights. Contrary to the cause herein, in Sheppard v. Maxwell, supra, the publicity received before and during the trial, "virtually converted said trial into a circus which justified the reversal of the judgment in said case." [11]

Nor are we dealing in the instant case with the situation present in Estes v. Texas, 1965, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543, "where the reversal of the judgment on the ground of the absence of due process of law was based on

11. See People of Puerto Rico v. Maldonado Dipini, 1969, 96 D.P.R. 897, 96 P.R.R. ——.

the following facts: (1) massive pretrial publicity had been given to the case; (2) a motion to prevent telecasting, radio broadcasting, and news photography was denied; (3) the hearing of said motion was conducted in the presence of prospective witnesses and jurors carried live on television and radio, and news photography was permitted; (4) the original jury panel, the trial judge, petitioner and counsel were highly publicized; (5) four of the jurors had heard all of the broadcasts; (6) the State's opening and closing arguments were carried live with sound as well as the return of the jury's verdict and its reception by the judge; and (7) videotapes without sound of the whole proceeding were permitted." [12]

With respect to pretrial or trial publicity and its possible effect on the prospective jurors, in the case of Irvin v. Dowd, 1961, 366 U.S. 717, at page 722–723, 81 S.Ct. 1639, at page 1642, 6 L.Ed. 2d 751, the Supreme Court of the United States, has expressed as follows:

"It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on

the evidence presented in the court. Spies v. People of State of Illinois, 123 U.S. 131, 8 S.Ct. 22, 31 L.Ed. 80; Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021; Reynolds v. United States [98 U.S. 145, 25 L. Ed. 244], supra."

On the other hand, the heart of the democratic process is publicity. The greatest safeguard possessed by one accused of crime is that, so far as possible, everything about his accusation, trial and conviction or acquittal be of public knowledge. The Constitution of the United States has specifically recognized both of these interests. The right of the accused to a fair, impartial trial is recognized in the Sixth Amendment. Freedom of the press is guaranteed in the First Amendment.[13] Each one must be preserved. See Holtzoff, The Relation between a Fair Trial and the Right of Freedom of the Press, 1 Syracuse L.R. 368, 375 (1950).

In the light of said considerations, the Court is unable to draw an analogy between the *Sheppard* case on which plaintiff strongly relies, and the case at bar where he has state remedies available to undo any adverse effect the publicity received in his cases may have on the prospective jurors, without the need of seeking injunctive relief in this forum.

The Constitution of the Commonwealth of Puerto Rico in its Bill of Rights guarantees every person charged with a felony a trial by an impartial jury.[14] Should it appear that a jury was prejudiced, its verdict is not valid and therefore, can be nullified. It is also a constitutional mandate for the presiding judge to verify that the jury selected is an impartial one. To that effect, the law invests said trial magistrate with the necessary legal prerogatives.

12. Id.

13. The importance of the press in the democratic process and its impact upon the public knowledge has been recently expounded in the case of New York Times

Co. v. United States 1971, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822.

14. See Article II, Section 11 of the Constitution of the Commonwealth of Puerto Rico.

See Fuster, "Los Derechos Civiles Reconocidos en el Sistema de Vida Puertorriqueña", Comisión de Derechos Civiles, San Juan, Puerto Rico (1968).

In view of the preceding conclusions of law, this Court does not find it necessary to decide at this time the jurisdictional question as to whether or not the defendant, Commonwealth of Puerto Rico, is a "person" under the Civil Rights Act, supra, and whether or not said defendant has waived its sovereign immunity to be sued in this Court. But see Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 873, 5 L.Ed.2d 492; Toa Baja Development v. Garcia Santiago et al., D.C., 312 F.Supp. 899. Order and Opinion of May 5, 1970 (J. Fernández Badillo); Vistamar, Inc. v. Santiago Vazquez et al., D.C., 337 F.Supp. 375, Order of August 28, 1970, (J. Cancio); Salkin v. Commonwealth of Puerto Rico (1 Cir. 1969), 408 F.2d 682; and Cortés v. Commonwealth of Puerto Rico, (1 Cir. 1970), 422 F.2d 1308.

In view of the reasons set forth in the foregoing findings of fact and conclusions of law, the preliminary injunction requested by plaintiff in the complaint herein is hereby denied. A judgment will be entered accordingly.

## JUDGMENT

The Court, having entered its Findings of Fact and Conclusions of Law in the above entitled case and pursuant to said opinion entered on January 18, 1972, hereby enters the following judgment:

It is ordered, adjudged and decreed, that the preliminary injunction requested by plaintiff be and hereby is denied; and it is further

Ordered, adjudged and decreed, that in view of the recent decisions of the First Circuit Court of Appeals in the cases of T. M. T. Trailer Ferry, Inc. v. Unión de Tronquistas de Puerto Rico, Local 901, 453 F.2d 1171 (decided on December 20, 1971) and Santiago et al. v. Corporación de Renovación Urbana Y Vivienda de Puerto Rico et al. 453 F.2d 794 (decided on January 5, 1972), the petitioner is hereby given ten (10) days to come forward, by way of a motion, and move the Court to consider the permanent injunction requested in the original complaint,** and it is further

Ordered, adjudged and decreed, that if after said ten (10) days the above mentioned motion has not been filed, this Court will enter an Order denying the permanent injunction requested in the original complaint and dismissing the complaint on the grounds stated in the Findings of Fact and Conclusions of Law and this Judgment.

It is so ordered.

---

** In the case of T. M. T. Trailer Ferry, Inc. v. Unión de Tronquistas de Puerto Rico, Local 901, supra, plaintiff argued that the District Court of Puerto Rico erred in dismissing the complaint, which also sought permanent injunctive relief and damages, on the basis of a hearing which was called to consider only plaintiff's request for a preliminary injunction. The First Circuit Court of Appeals in answering said argument stated:

"While it is true, as defendant contends, that a court has the power under Fed.R.Civ.P. 65(a) (2) to determine both the merits of the complaint and a request for temporary relief at a single hearing, the exercise of that power is tempered by the requirement that the court inform the parties 'before or after the commencement of the hearing' that such action is contemplated. The district court in the case at bar at no time prior to completion of plaintiff's case put plaintiff on notice that the scope of the scheduled hearing would include a decision on the merits of the complaint. The court at no time 'ordered' the consolidation of plaintiff's request for a preliminary injunction with his claim for permanent injunctive relief and damages."

Said position was again reasserted by the First Circuit Court of Appeals in the case of Santiago et al. v. Corporación de Renovación Urbana y. Vivienda de Puerto Rico et al., supra.

## OPINION AND ORDER

### On Motion for Stay

On April 4, 1972, the petitioner herein filed a motion requesting this Court to stay local proceedings to be started against the petitioner on April 7, 1972, in Criminal Cases G–69–2813 and 2814. Said stay is requested until the United States Court of Appeals for the First Circuit decides an appeal timely filed by the petitioner or for a reasonable time in which the petitioner may be able to apply to the United States Court of Appeals for the First Circuit for the same remedy.

Jurisdiction of the Court to grant the requested remedy is asserted by the petitioner to be provided by Rule 62 and Rule 65 of the Federal Rules of Civil Procedure, Title 28, United States Code and by Section 1651 of Title 28, United States Code.

Plaintiff basically contends that this Court should exercise its discretion in his favor, specially when it has granted the appeal in forma pauperis. He further alleges that if the trial is held the questions presented in the appeal will be rendered moot and will subject the plaintiff to violations of his constitutional rights as alleged by him in his original petition for injunctive and declaratory relief.

Defendants filed this day an opposition to the requested extraordinary remedy wherein they assert this Court should not grant the requested stay, for it has been decided by this Court in its Opinion of January 18, 1972, denying plaintiff's request for preliminary injunction, that under the facts and record of this case, it did not have sufficient grounds to exercise its discretion in favor of the plaintiff, and thus interfere and halt proceedings already initiated in the Courts of the Commonwealth of Puerto Rico, as such would be in contravention of the express congressional precept enunciated by Section 2283 of Title 28, United States Code.

Defendants further assert that the plaintiff has failed to move for the stay promptly. This assertion is predicated upon the fact that the plaintiff filed the notice to appeal this Court's denial of the preliminary injunction (Order of January 18, 1972) and permanent injunction (Order of February 9, 1972), on February 8, 1972 and has waited until the Courts of the Commonwealth of Puerto Rico have exercised their lawful right to set the trial of the criminal cases pending against him, to request the stay of the said proceedings, when it was his duty to be diligent. In this connection the defendants bring to the attention of this Court the Memorandum and Order entered by the United States Court of Appeals for the First Circuit on July 12, 1971, in the case of Rodríguez Rivera et al. v. Maiz et al., D.C., 331 F.Supp. 713. In said case the Court of Appeals decided that it was tardy to file in early July 1971 a motion addressed to the discretion of this District Court, requesting a stay pending appeal, when this District Court had entered its Opinion and Order on April 15, 1971. In said case, on July 8, 1971, the plaintiff sought a stay from the Circuit Court, in view of this Court's denial of the petition for stay; asserting that the criminal cases therein involved were set for trial on August 3, 1971. Deciding upon said request, the Circuit Court stated that the plaintiffs waited too long to seek such relief and that since it was obvious that the Commonwealth of Puerto Rico seeked to put the plaintiffs to trial, it was incumbent upon them to be diligent.

This Court, after having had the benefit of considering the Memoranda of Law filed by counsel and after having heard counsel for the parties on this day, is of the opinion that it cannot grant plaintiff's request for stay in view of the position so clearly stated by the United States Court of Appeals for the First Circuit, upon whose decisions we are bound, in the case of Rodríguez

Rivera et al. v. Maiz et al., explained above. The plaintiff in the present case failed to be diligent by not requesting this Court the remedy he now seeks when it was appropriate; that is, immediately or within a short time after this Court entered its Order of February 9, 1972, denying his request for permanent injunction. The fact that he filed a notice of appeal in this case and that this Court granted on February 15, 1972, his request that he be allowed to appeal in forma pauperis, in no way stayed the proceedings pending before the Courts of the Commonwealth of Puerto Rico. Nor the fact that he has filed on February 25, 1972, a motion requesting this Court to correct footnote No. 1 of its Findings of Fact and Conclusions of Law entered on January 18, 1972 in support of this Court's Judgment denying plaintiff's request for injunctive and declaratory relief, and that said motion and its opposition from the defendants have not at present been resolved by this Court. This is specially true when the only thing before the Court in the last stated motion is what transpired in the injunctive proceedings, in relation to the temporary restraining order granted in said case and the extension the Court could have granted. The plaintiff cannot assert that the pendency of this motion for correction is an excuse for the diligency necessary on his part to request a stay when it is to his knowledge that no Temporary Restraining Order can last more than the period of the injunctive proceedings, and that the Court cannot conclude any other thing as to what was agreed between the parties in relation to it in the injunctive proceedings.

In view of the procedural aspect discussed above, which the Court is of the opinion that is dispositive of the motion before us, the Court does not have to pass upon respondents' additional assertion that the appeal does not present a substantial question.

Wherefore, the Court hereby denies plaintiff's request for stay of the proceedings in the Commonwealth Court.

It is so ordered.