**Victor Pagan OQUENDO, Plaintiff,**

**v.**

**Hon. Eugenio Ramos ORTIZ, Superior Court Judge in the Superior Court of Puerto Rico, San Juan District, Criminal Section, Defendant.**

**Civ. No. 772-73.**

United States District Court,
D. Puerto Rico.

Oct. 1, 1973.

Victor Gutierrez Fernandez and Santos P. Amadeo and Victor Miguel Casals, Santurce, P. R., for plaintiff.

Peter Ortiz, Deputy Sol. Gen., Commonwealth Dept. of Justice, San Juan, P. R., for defendant.

## MEMORANDUM OPINION AND ORDER

TOLEDO, Chief Judge.

By way of amended complaint filed September 11, 1973, wherein the jurisdiction of this Court is properly alleged, Victor Pagán Oquendo seeks injunctive and other appropriate relief under the provisions of Title 28, United States Code, Sections 1343, 2201 and 2202, and Title 42, United States Code, Section 1983, on grounds that his rights as guaranteed by the Fifth, Sixth, Ninth and Fourteenth Amendments of the Constitution of the United States, will be jeopardized if he must stand trial, as scheduled, for first degree murder and violation of the weapons law, Titles 33 and 25, Laws of Puerto Rico Annotated, Sections 631 and 418, respectively, in the Superior Court of San Juan, Puerto Rico, Hato Rey Section, Room Number 8, before the Honorable Judge Eugenio Ramos Ortiz. Specifically, Pagán Oquendo alleges that certain adverse publicity he received in local newspapers in connection with a previous criminal action against him, wherein he pleaded guilty to two counts of rape and received a suspended sentence, will make it impossible for him to receive a fair and just trial before Judge Ramos Ortiz.

The plaintiff has submitted into evidence a total of twenty two (22) newspapers wherein are printed articles, some of whose headlines read: "Young Man Used Knife in Attacks on Women", "Indefinite Trial Delay is Asked for Rapist", "Rapist Pagán Goes on Trial in Slay Case", and "Freed Rapist Faces Murder Charges".

Pagán Oquendo was originally scheduled to stand trial for murder on August 28, 1973. But on August 27, 1973, he

filed a complaint in this Court asking that we stay proceedings in the State Court. We issued an order on the same day requiring defendants herein to appear before us on September 13, 1973 and show cause why the State Court proceeding should not be enjoined. As a consequence of our order, the State Court postponed trial for September 5, 1973. On September 5, 1973, the plaintiff again filed a motion requesting injunctive relief and by order of this Court, proceedings were stayed until September 15, 1973.

At the hearing on September 13, 1973, the plaintiffs moved orally for an extension of the temporary restraining order and after arguments were heard, the extension was granted.

As things stand now, Pagán Oquendo will stand trial for murder and violation of the weapons law before Judge Ramos Ortiz on October 2, 1973.

The plaintiff now requests that we enjoin the state proceedings until such time as the adverse publicity surrounding his case "fades away". He argues that otherwise, the prejudicial pretrial publicity he has received will taint the minds of the jurors to such an extent that it. will be virtually impossible for him to receive a fair, just and impartial trial. Inasmuch, as such an eventuality will cause him irreparable damage both great and immediate, the plaintiff argues, the Anti-Injunction Act, Title 28, United States Code, Section 2283, should not be interposed to bar the equitable relief sought. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1970); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1970); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1970).

The plaintiff maintains that the threat posed to his federally protected right cannot be eliminated by his defense against a single prosecution. Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714.

Plaintiff's attorney states in his memorandum of law that plaintiff's cause of action has been sustained by the United States Supreme Court in the case of Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1971). But that case holds nothing more than that it is error for a District Court in a Section 1983 action to hold it is absolutely without power to enjoin a criminal proceeding in a state court under any circumstances whatsoever. The *Mitchum* Court points out that Section 1983 of the Civil Rights Act is an Act of Congress intended to be an exception to the general provisions of the Anti-Injunction Act. We do not question Pagán Oquendo's right to seek relief under Section 1983 over and above the provisions of Section 2283, but to do so, there must still be a showing of bad faith harassment or irreparable injury that is both serious and immediate before this Court will enjoin a criminal proceeding pending in the Commonwealth Court. Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488, decided May 7, 1973.

After duly considering all the evidence submitted in the case at bar and based on the principles set down by this Court in the case of Martinez v. Commonwealth of Puerto Rico (D.C.P. R.1972), 343 F.Supp. 897, we feel Pagán Oquendo has not made a showing of irreparable injury beyond that type of injury incidental to every criminal proceeding brought lawfully and in good faith. Douglas v. City of Jeannette (1943), 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324. Whatever degree of injury Pagán Oquendo has suffered due to adverse publicity, can be counteracted by recourse to the available state remedies designed to insure a fair and just trial.

The plaintiff cites Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L. Ed.2d 600, as support for his contention that the Commonwealth proceedings involved herein should be enjoined. We note immediately, however, that the type of adverse publicity received by Pagán Oquendo is nowhere near as severe as the type of adverse publicity surrounding the trial of *Dr. Sam Sheppard* and

which caused the Supreme Court of the United States to overturn his conviction for murder.

Furthermore, the Supreme Court of the United States did not reverse *Dr. Sam Sheppard*'s conviction on grounds of prejudicial pretrial publicity. There is no way to stop a free press from generally informing the citizenry of public events and occurrences on grounds that such information might prejudice a citizen's right to a just and fair trial. As Justice Douglas stated in his dissenting opinion in Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 2686, 33 L.Ed.2d 626, 657:

> "The press has a preferred position in our constitutional scheme to bring fulfillment to the public's right to know. The right to know is crucial to the governing powers of the people." (at page 721, 92 S.Ct. at page 2692).

*Dr. Sam Sheppard*'s conviction was reversed, rather, because given the prejudicial pretrial publicity, the Court did not take precautionary measures against it, and because it allowed such publicity to invade the accused's rights during trial.

The right of the press to publish free from restraint and the right of the accused to receive a fair and impartial trial are not mutually exclusive and we have no reason to think that the trial Court herein involved will not act to insure that Pagán Oquendo be allowed to exercise all the precautionary state remedies that are available to him. As we stated in Martinez v. Commonwealth of Puerto Rico, supra, these remedies include:

> "(a) in the pending criminal proceedings no jury has been selected yet, and at the proper time plaintiff will have the opportunity to voir dire said jury and inquire from each and every one of them if he has been influenced by the press statements made in his cases; (b) under Rule 113 of the Commonwealth Rules of Criminal Procedure, Title 34 Laws of Puerto Rico Annotated, plaintiff will also have the opportunity of challenging the whole panel as well as each juror individually; and (c) he has a whole gamut of appealable remedies, first, to the Supreme Court of Puerto Rico from the decision of the Superior Court on the attack he may care to make on the jury, and, if convicted, he may appeal the decision to the Supreme Court of Puerto Rico; and lastly, he may seek ultimate direct review from the Supreme Court of the United States under Title 28, United States Code, Section 1258."

In addition to *Sheppard*, the plaintiff also relies on Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965); and Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543. Such reliance, however, is misplaced.

In Turner v. Louisiana, the Supreme Court reversed a murder conviction because during the trial two deputy sheriffs who were the principal prosecution witnesses had custody of the jurors and as a result were in close and continuous association with them, freely mingling and conversing with them throughout the trial period. Such an eventuality has not taken place in the case at bar, nor have we been shown that it will take place.

In Estes v. Texas, the trial court, in the face of massive pretrial publicity, allowed telecasting, radio broadcasting and news, photography of a hearing to change venue conducted in the presence of some trial witnesses and veniremen later released. The original jury panel, petitioner's counsel and the trial judge, were highly publicized during the days the hearing lasted and four (4) of the jurors selected later at trial, had seen or heard all or part of the broadcasts. But paramount in the Supreme Court's estimation that the conviction should be reversed was the pervasive and disruptive effect the new media was allowed to

play during the trial. Inasmuch as the trial court allowed such a thing to happen, it was, in a sense, party to the undermining of the accused's rights.

We have no reason to believe that the trial court involved herein would not act in just the opposite manner, and in so doing, protect this plaintiff's right to a fair and just trial.

Rideau v. Louisiana, supra, cited by plaintiff, involves the case of a man arrested in Calcasieu Parish, Louisiana, for robbery and murder. While in jail, prior to trial, a filmed interview with the accused was made wherein he made a full confession to the charges against him. On different days, the filmed interview was brought to the attention of 100,000 of Calcasieu Parish's 150,000 residents.

At the voir dire, three members of the jury that eventually convicted *Rideau* stated they had seen and heard *Rideau*'s televised interview. Two other members of the jury were deputy sheriffs of Calcasieu Parish. *Rideau*'s counsel had requested that these jurors be excused for cause, having exhausted all peremptory challenges, but these challenges for cause were denied by the trial judge. At page 725 of 373 U.S., 83 S.Ct. 1417, 10 L.Ed.2d 663. A change of venue was also denied.

Proper utilization of the voir dire and recourse to the plaintiff's right to ask for a change of venue are remedies available to plaintiff in the case at bar and we have no reason to doubt that full access to them will be provided at trial.[1]

More relevant than the aforementioned cases to the situation present in the case at bar, is the language used by the Supreme Court of the United States in the case of Irvin v. Dowd, 366 U.S. 717, on page 722, 81 S.Ct. 1639, on page 1642, 6 L.Ed.2d 751 (1960), wherein the Court states:

"It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in Court. Spies v. Illinois, 123 U.S. 131, 8 S.Ct. 21, 31 L.Ed. 80; Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L. Ed. 1021; Reynolds v. United States, 98 U.S. 145, 155, 25 L.Ed. 244.

Before disposing of plaintiff's argument concerning his alleged prejudicial pretrial publicity, we feel it is appropriate to make an additional observation. The news media's coverage of Pagán Oquendo's upcoming murder trial stems principally, if not exclusively, from the fact that he was given a suspended sentence in relation to a previous case wherein he pleaded guilty to two counts of rape. This fact has triggered Pagán Oquendo's adverse publicity and we cannot help but foresee that every time Pagán Oquendo's trial is reset, the same publicity will be given to his trial and he will come back to this Court for the same type of protection he is requesting now.

 Apart from plaintiff's argument concerning prejudicial pretrial publicity,

1. Also in Rideau v. Louisiana, more than half the community wherein the trial was to be held had previous exposure through the media of the facts surrounding the case. In the case at bar, the proportion is not nearly as great inasmuch as the four major newspapers have a combined circulation in the Metropolitan Area of 211,479, while the population of the San Juan area is over 800,000.

certain asseverations are made pointing to specific Acts of Judicial Bad Faith and Harassment. Younger v. Harris, supra, and companion cases. The specific Acts cited by plaintiff's attorney, one of which includes a charge that the defendant herein, Judge Eugenio Ramos Ortiz unduly scolded the plaintiff in front of prospective jurors for coming into court with his shirt unbuttoned, and without an undershirt, do not approximate the type of bad faith harassment which caused the Supreme Court in the case of Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), to restrain further prosecution in the State Court of pending criminal proceedings.

In view of the reasons set forth in the foregoing opinion, the preliminary injunction and other appropriate relief asked for by the plaintiff in the complaint herein, should be and are hereby denied.

It is so ordered.